(No. 30115.

THE PEOPLE *ex rel.* Chicago Bar Association *et al.*, Relators, *vs.* PAYSOFF TINKOFF, Respondent.

*Opinion filed January 22, 1948—Rehearing denied March 11, 1948.*

CHARLES LEVITON, (SAMUEL M. KANE, DOUGLASS PIL-
LINGER, and ABNER GOLDENSON, of counsel,) all of Chi-
cago, for relators.

PAYSOFF TINKOFF, of Chicago, respondent *pro se.*

Mr. CHIEF JUSTICE MURPHY delivered the opinion of
the court:

Prior to the June term, 1937, of this court, Paysoff
Tinkoff was a duly licensed attorney at the bar of this
court and his name appeared on the roll of attorneys. Dur-
ing said term he was disbarred. In March, 1944, and
again in November, 1946, he petitioned this court to have
his name reinstated on the roll of attorneys. Both petitions
were denied. During the March term, 1947, leave was
granted to file an information against Paysoff Tinkoff on
the relation of the Chicago Bar Association and certain of
its members serving on a committee for unauthorized prac-
tice of the law. The purpose sought was to obtain a rule
on Tinkoff to show cause why he should not be punished
for contempt of this court. An order was issued as prayed,
and on May 1, 1947, Tinkoff filed a motion to dismiss
the information and on the same day filed an answer.

The information set forth certain acts of respondent
in connection with three suits started and prosecuted in the
superior court of Cook County, which conduct it was alleged

constituted the practicing of law. The motion to dismiss raised an issue as to whether the acts charged were sufficient to show that he was practicing law. The issues raised by the answer are not materially different from those raised by the motion to dismiss, and the discussion of the facts will be confined to those admitted by respondent's answer to be true.

Respondent maintained an office on the first floor at 6353 North Clark Street, Chicago. By letterheads and advertisement on two of the office windows respondent held himself out to the public as a tax accountant, specializing in Federal and State tax matters. He was a licensed real-estate broker and such occupation was referred to in the lettering on one of the windows. It is not claimed that his activities as a real-estate agent or as an accountant specializing in Federal and State tax matters constituted the practice of law, but it does appear that in one of the cases respondent first contacted the parties whom he is alleged to have represented as an attorney, while engaged in assisting them on income tax matters. On one of the windows of his office opening onto the street was the following advertisement: "Specialist in long term leases and trust conveyances."

The exact date does not appear, but it was sometime between February 24, 1946, and March 30 following, that respondent contacted Peter Harles and Christine Harles, husband and wife, while conferring in reference to their income tax matters. According to respondent's version, he learned at that meeting that the Harleses formerly owned some real estate which they had conveyed to one John Huske on February 24, 1946. It is stated in his answer that his inquiry as to such conveyance was to ascertain the circumstances surrounding the execution of the deed and to determine whether there was a profit or loss to be reported in their income tax return. The motive for the inquiry is not material but what he did for the Harleses

thereafter is pertinent. Huske conveyed the property to Samuel M. Fleischer and Thirza Fleischer. The consideration the Harleses received for the conveyance was $2000.

On March 30, 1946, respondent drafted a notice addressed to Samuel H. Fleischer and one William E. Marks, doing business as R. W. Roberts Real Estate Company. It was entitled a rescission of oral contract and warranty deed executed February 24, 1946. It was signed Peter Harles and Christine Harles, by Paysoff Tinkoff, "Real Estate Agent." The substance of the notice was that the Harleses had learned that Huske purchased the property for Fleischer, and that they had recently ascertained that Marks who had been the Harleses' agent was also the agent of the purchaser and that Marks had concealed such facts from them. It was also stated that the conveyance had been made subject to a right of redemption as in foreclosure suits, and the Harleses thereby offered to return the $2000 previously paid. The condition of the tender was that the deeds were to be canceled and title revested in the Harleses. It was further stated that the notice did not purport to set forth all the fraud and conspiracy that had transpired in the transaction, but it concluded with a warning that if no reply was received to the communication in three days, it would be cause for instituting legal proceedings to set aside the entire transaction.

Two instruments were signed by the Harleses on August 31, 1946. One assigned, transferred and delivered all their right, title and interest in and to the property transferred February 24, 1946, to John Huske, to "Paysoff Tinkoff, legal and natural guardian of Paysoff Tinkoff, Jr., Ward and Son." The assignment also included all rights the assignors had against William E. Marks, R. W. Roberts Real Etate Company, Samuel H. Fleischer and his wife Thirza Fleischer. The consideration for the assignment was stated to be $1. It granted "Paysoff Tinkoff, Guardian, any and all rights to institute any proceedings at

law or in equity to enforce any and all rights which may exist in our behalf against the parties aforementioned, and which rights are transferred hereby, with the specific understanding that the said Peter Harles and Christine Schaack Harles, the assignors herein shall not in any way be directly or indirectly liable for any costs or expenses in the prosecution of any suit or suits at law or in equity to enforce said rights."

The second instrument signed by the Harleses as parties of the first part and Paysoff Tinkoff, guardian, party of the second part, was a contract which recited that in consideration of the assignment of all right, title and interest which the Harleses had in the property transferred to Huske, and all their rights they had against Marks and the Roberts Real Estate Company "that the said parties of the first part should retain as their own the $2,000 which they had received for the conveyance to Huske on February 24, 1946." It was further agreed that the Harleses "shall not incur any liability for costs or expenses in prosecuting any suits to enforce the rights of said parties of the first part against said John Huske," and others. It was further agreed that the Harlesses would be entitled to receive as a part of their consideration "10% of any and all profits that may be realized by the assignee, Paysoff Tinkoff, Guardian of Paysoff Tinkoff, Jr., in the successful prosecution of any proceeding or proceedings, after determining the costs of the property plus the reasonable value of the services rendered in the prosecution of said claims or proceedings, as the basis for establishing the costs, in the determination of the said 10% profit aforementioned."

On September 4, 1946, respondent filed an action in the superior court of Cook County entitled "Paysoff Tinkoff, Guardian of Paysoff Tinkoff, Jr., Ward, Assignee of Peter Harles and Christine Schaack Harles v. William H. Fleischer, Thirza Fleischer, his wife, William E. Marks, R. W.

Roberts, d/b/a Roberts Real Estate Company and John Huske," defendants. The suit was an action to vacate, set aside and cancel the warranty deed executed on February 24, 1946, to Huske. It further appears that after said cause was docketed, an order of court was obtained to take the depositions of the Harleses, that they did appear before a notary on September 23, 1946, to give their depositions, that respondent appeared on behalf of said witnesses, made numerous objections and advised the witnesses in reference to their answering certain questions propounded to them, that said witnesses relied upon the advice of respondent and refused to answer the questions, and that thereafter a rule was entered against them in the court where the cause was pending, requiring them to show cause why they should not be held in contempt for failure to answer questions; that on said hearing respondent appeared in court, made numerous objections and examined the witness Peter Harles.

Respondent admits that on March 26, 1945, he filed another suit entitled "Paysoff Tinkoff, Jr., by Paysoff Tinkoff, next friend and lawful guardian, assignee of Peter Pedersen and Lena Bredersen, et al., v. Grover C. Guthaus, et al.," that said suit was designated as a petition to remove cloud upon title.

It is also admitted that on April 20, 1945, respondent filed a suit designated as a bill for accounting, entitled "Paysoff Tinkoff, the next friend and lawful guardian of Paysoff Tinkoff, Jr., assignee of Emma Heitmann v. George C. Eckhoff, et al." Respondent avers that said suits were filed in his representative capacity under valid contracts and denies that they were a sham or subterfuge conceived for the purpose of permitting him to appear in said actions as attorney for the real parties in interest.

This matter is presented by relators on the theory that respondent held himself out to the public as possessing the necessary qualifications to practice law, and that the practice which he adopted of having matters about to be liti-

gated assigned to his minor son was a mere subterfuge designed by respondent to submerge the identity of the real parties and make a semblance of an action in which he might appear *pro se*. Respondent denies he had any such motive and contends that the assignment and all the proceedings were *bona fide,* that he had a lawful right to start the actions in his name as natural guardian of his son and to appear in his own behalf.

The courts are in accord on the proposition that where one appears in a court representing one of the parties to the litigation, counsels and advises with such party in reference to his rights in the suit, selects the kind of pleading and drafts it, and assumes general control of the action in the court, he is engaged in the practice of law. It is also well settled that the question as to what constitutes practicing of law is not limited to practice in courts of record but may include the giving of advice, counseling, drafting of legal documents and the participation in transactions which are outside the scope of the actual litigation of a cause in the courts. The decisions of this court are in accord with that principle. *People ex rel. Chicago Bar Ass'n* v. *Goodman,* 366 Ill. 346; *People ex rel. Courtney* v. *Ass'n of Real Estate Tax-Payers,* 354 Ill. 102; *People ex rel. State Bar Ass'n* v. *Peoples Stock Yards State Bank,* 344 Ill. 462.

Any person who has an interest in a matter to be litigated in the courts has the right to appear in his own behalf and protect his own interests so long as he proceeds in accord with rules of practice and procedure. By these principles, the only question in this case is as to the effect of the assignments transferring interests in matters about to be litigated to respondent's minor son. The answer to this question must refer to the good faith with which respondent conducted himself.

Respondent's conduct in the Harles matter falls into two classes. When he prepared the notice of rescission of

oral contract and warranty deed, he was assuming control of a matter for the Harleses that involved their legal and equitable rights in a piece of property. It was of such a nature as to call for a selection of procedure that was to be followed and the only conclusion to be drawn from the transaction is that respondent counseled and advised with the Harleses as to the selection they should make and the course to follow. The language of the notice indicates that the parties recognized that it was a forerunner to litigation, and in fact the notice contained a warning that if no reply was received within three days it would be cause for court action. Respondent signed his name and added the words "Real Estate Agent," but such description of occupation could not alter the character of the service he was rendering when he counseled the Harleses and drafted the notice. He contends the notice was prepared pursuant to his investigation of the Harleses income tax matters. As previously stated, we will not determine in this case whether one who prepared a Federal income tax return for another is engaged in the practice of the law, but the notice prepared by respondent in this case goes beyond anything that would be required in the preparation of an income tax return. Respondent was practicing law when he counseled with the Harleses in reference to said notice and was so engaged when he drafted it. (*People* v. *Goodman,* 366 Ill. 346; *People* v. *Peoples Stock Yards State Bank,* 344 Ill. 462.) See annotation 111 A.L.R. 19, as to when drafting of papers, wills, etc., constitute practice of law, supplemented in 125 A.L.R. 1173, and 151 A.L.R. 781.

The other branch of respondent's activities pertains to what he did in the actions filed in the court. Again referring to the Harles case, we note that there is nothing in the record to show that respondent's minor son paid anything for an interest in the Harles matter except that it is stated that the consideration for the assignment was $1. The language of the assignment and the contract clearly

indicate that the Harleses continued to hold an interest in the litigation even after the assignment was executed. As evidence of this, they were to receive ten percent of the net returns of whatever the guardian of Paysoff Tinkoff, Jr. (respondent) should realize from the successful prosecution of the proceedings. The contract provided that before the Harleses participated on the percentage basis there should be deducted "costs of the property, plus the reasonable value of services rendered in the prosecution of said claims or proceedings." It is evident that such provision was inserted on the theory that respondent was to be paid for his legal services before there should be any division of the remainder with the Harleses. It is significant that the contract and assignment were dated only five days preceding the filing of the suit in the superior court.

The purported assignments of interest in litigations to respondent's minor son were a subterfuge employed by respondent for the purpose of deceiving the court as to the real parties in interest and to provide a devious procedure by which he thought he could nullify the order of this court disbarring him and striking his name from the roll of attorneys. The practice of law, both in courts and out of courts, by one not licensed, is an illegal usurpation of the privilege of an attorney and is contempt of this court. *People* v. *Goodman,* 366 Ill. 346; *People ex rel. Chicago Bar Ass'n* v. *Chicago Motor Club,* 362 Ill. 50; *People ex rel. Chicago Bar. Ass'n* v. *Motorists Ass'n,* 354 Ill. 595; *People* v. *Ass'n of Real Estate Tax-Payers,* 354 Ill. 102; *People* v. *Peoples Stock Yards Bank,* 344 Ill. 462.

When respondent appeared for the Harleses in the superior court action some one or more of the defendants moved to exclude him from participating in the litigation on the ground that he was not licensed to practice law. A hearing was had and the trial court denied the motion. Respondent contends that the order of the court in that case is *res judicata* of the question as to the capacities in

which he appeared there. Such defense is not available in this case. The action taken by the trial court could not operate against an inquiry of this court to determine whether respondent was guilty of contempt.

It is the order and judgment of the court that the respondent, Paysoff Tinkoff, be found guilty of contempt and be assessed a fine of $500 and that he pay the costs of this proceeding.

*Respondent found guilty of contempt.*