**UNITED STATES of America, Plaintiff,**

v.

**James J. HARDY, Defendant.**

**No. 86 CR 169.**

United States District Court,
N.D. Illinois, E.D.

March 25, 1988.

Anton R. Valukas, U.S. Atty., by Joseph H. Hartzler, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Philip C. Parenti, Philip C. Parenti, Ltd., Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

The matter concerns the government's motion for a rule to show cause why defendant's probation should not be revoked or, in the alternative, why defendant should not be held in contempt of court. For the reasons stated herein, both motions are entered and continued until after defendant has filed his 1987 tax returns and made all appropriate adjustments regarding payments specified under his restitution order.

## I. FACTS

On May 15, 1986, defendant James Hardy, an attorney, pled guilty to three counts of mail fraud stemming from a scheme to defraud his former clients of over a half million dollars. Hardy settled his clients' cases without their knowledge and absconded with the settlement proceeds. On July 8, 1986, Hardy was sentenced to six months work release, followed by three years probation. Hardy was also ordered to make full restitution to all victims. At the sentencing hearing, Hardy volunteered to pay one half of his income during his probation as restitution and reiterated his willingness to cooperate fully in seeing that his victims were made whole. Hardy also agreed to cooperate in surrendering his law license and promised not to practice law.

Shortly after completing his work release sentence, Hardy began functioning as a self-employed paralegal. Hardy forwarded a letter to his probation officer informing her of his employment plans and desire to some day regain his law license. Hardy states that he performs legal research and writing, preparation of draft pleadings and agreements, and other miscellaneous tasks under the supervision of licensed attorneys. Hardy asserts that he does not represent clients, offer legal advice to clients or receive fees from clients. Instead, he receives compensation from the supervising attorney on a project or hourly basis. Hardy represents that all attorneys using his services are aware of his background.

Sometime in November 1986, Hardy agreed to assist a Mr. Arthur Crooks in a collection dispute. After prospects for settlement diminished, Hardy drafted a one-page complaint and summons for Mr. Crooks and filed them in the Circuit Court of Cook County. The Company lists Mr. Crooks as the *pro se* plaintiff. From the initiation of their relationship, Mr. Crooks knew Hardy was not a lawyer and was informed by Hardy that he could not represent Mr. Crooks as his attorney. Mr. Crooks was instructed that he would have to obtain a lawyer if the case had to be argued in court. Hardy also told Mr. Crooks that he would not be charged a fee for any of Hardy's work. Hardy never appeared in court on behalf of Mr. Crooks. No attorney, however, acted in a supervisory capacity in connection with Hardy's activities with Mr. Crooks.

In January or February 1987, Hardy agreed to assist a Mrs. Michele Crump in a divorce proceeding. Mrs. Crump told Hardy that she and her husband had agreed on the terms of the divorce and just needed someone to draft the proper documents. Hardy prepared a petition for dissolution of marriage and a summons listing Mrs. Crump as the *pro se* petitioner. Hardy also accompanied Mrs. Crump to a court hearing but did not represent himself to be a lawyer for either Mr. or Mrs. Crump. Like Mr. Crooks, Hardy informed Mrs. Crump that he was not an attorney, could not practice law, could not provide legal advice and would not charge her a fee for his work. Once again, no attorney supervised Hardy's activities on behalf of Mrs. Crooks.

Subsequent to his conviction, Hardy was named in a number of civil cases brought by victims of his mail fraud scheme. In one such case, Hardy refused to answer certain questions posed during a deposition which concerned potentially incriminating conduct. Expressing concern that his answers might subject him to state prosecution, Hardy asserted his Fifth Amendment privilege against self-incrimination. Aside from these instances, however, Hardy an-

swered all other questions put to him during the deposition. After entertaining extensive argument on the plaintiff's motion to compel, the trial judge in that case ruled that Hardy had properly invoked his Fifth Amendment privilege.

On March 4, 1987, Hardy forwarded a letter to the Department of Justice and to his probation officer concerning his restitution order. The letter states in part: "I have an obligation to pay 50% of my net income for restitution, and I've made an arbitrary decision to send one-third of my gross assuming my tax obligations will take about one-third. Obviously, I'll have to make an adjustment at the end of the year when I file my federal tax return." Together with the letter, Hardy forwarded a check for $390.33, his first restitution payment. The amount reflected one third of his gross income for January and February 1987. In May and June, Hardy forwarded the respective amounts of $171.67 and $807.81 as additional restitution payments. Hardy represents these amounts constitute one third of his gross income as a paralegal during the remaining portion of 1987. Although Hardy received a $2,000 payment in 1987 for legal work performed in 1985, he did not include that amount when calculating his obligation under the restitution order because of his belief that the order pertained only to income generated after his conviction. Restitution payments received from Hardy for 1987 as of the date of this order total $1,369.81.[1]

## II. DISCUSSION

The government argues that the foregoing facts clearly establish that Hardy violated the conditions of his probation. First, the government asserts that Hardy's actions on behalf of Mr. Crooks and Mrs. Crump constitute the practice of law without a license and violate the terms of his probation. Second, the government contends that Hardy's refusal to cooperate in civil proceedings brought by victims of his mail fraud scheme is contrary to his express promise to do everything in his power to see his victims are made whole. Third, the government argues that Hardy's interpretation of the terms of his restitution obligations conflicts with the plain language of the restitution order. In light of Hardy's conduct in each of the three mentioned situations, the government strongly urges that Hardy's probation be revoked and that Hardy be incarcerated for the remaining term of his sentence. These arguments will be addressed in turn.

Illinois courts view the practice of law by one not licensed as an illegal usurpation of the privilege of an attorney and grounds for criminal contempt proceedings. *See People ex rel. Chicago Bar Ass'n v. Barasch*, 21 Ill.2d 407, 173 N.E.2d 417 (1961); *People ex rel. Chicago Bar Ass'n v. Tinkoff*, 399 Ill. 282, 77 N.E.2d 693 (1948). Practicing law is defined in Illinois as the giving of advice or rendition of any sort of service which requires the use of any degree of legal knowledge or skill. *Id.* If the advice offered or service provided requires more than ordinary business intelligence, it constitutes the practice of law. *People ex rel. Illinois State Bar Ass'n v. Schafer*, 404 Ill. 45, 87 N.E.2d 773 (1949).

In the present case, Hardy drafted the operative pleadings in two separate law suits. Although Hardy claims that these documents are routinely prepared by paralegals in Illinois, Hardy fails to recognize that paralegals must work under the supervision of a licensed attorney when performing such tasks. Although no Illinois authority exists which roughly approximates the facts surrounding Hardy's actions, common sense dictates that the drafting of even a simple complaint or an uncomplicated petition for dissolution of marriage requires at least some degree of legal knowl-

---

1. Hardy also forwarded a $400 check for restitution to the Clerk of the District Court in December 1987. The check, however, was returned for insufficient funds. Hardy claims to have sent a letter to the Clerk's Office asking that the check be resubmitted. The policy of the Clerk's Office regarding checks returned for insufficient funds does not provide for resubmission of the previously rejected check. Instead, a new check must be tendered together with a $25 service charge. To date, the Clerk's Office reports that Hardy has not submitted funds to cover the returned check or the service charge.

edge or skill. Thus, under Illinois law, Hardy's work on behalf of Mrs. Crump and Mr. Crooks constitutes the practice of law.

■ This conclusion, however, does not resolve the issue of whether Hardy's probation should be revoked. From the beginning of his dealings with Mr. Crooks and Mrs. Crump, Hardy explained that he was not a lawyer and could not act as their counsel. He also refused to charge any fee for his work. Hardy's actions reveal a sincere effort to assist two people with their legal problems while attempting to avoid the appearance of practicing law. Although Hardy was mistaken in assuming that the drafting of pleadings does not constitute the practice of law, Hardy's motives appear innocent if not admirable. The fact that this court declines to revoke probation on this ground, however, should not be interpreted by Hardy as an invitation to continue such unsupervised legal activity in the future. Under no circumstances should Hardy engage in any activity for a third party which requires any degree of legal knowledge or skill unless he is working under the supervision of a licensed attorney. Any future breach of this condition will result in revocation of probation.

■ As to Hardy's assertion of his Fifth Amendment privilege against self-incrimination, this court expresses surprise that the government believes such action constitutes cause for revoking Hardy's probation. This court did not condition Hardy's probation on the forfeiture of his constitutional rights. Nor can Hardy's conduct be viewed as a breach of his promise to assist his victims in recouping their losses. The facts show that Hardy selectively employed his privilege to avoid potentially incriminating questions and the trial judge in that case found the assertions of privilege to be proper. Hardy need not willingly expose himself to state prosecution to fulfill his promise to assist the victims in recovering their losses. As nothing suggests Hardy improperly asserted his privilege to thwart the success of civil proceedings pending against him, no grounds are stated for revoking Hardy's probation.

The final ground asserted for revoking Hardy's probation concerns the proper construction of conditions in the restitution order. Before addressing the government's arguments on this point, a review of the rationale underlying Hardy's sentence is appropriate.

The central consideration embraced in formulating Hardy's sentence was the welfare of the people who Hardy had injured: his defrauded clients and his 10–member family. Although a stiff jail sentence would have been a completely appropriate punishment for Hardy in light of his egregious crimes and served as a warning that future conduct will not be treated lightly, the damage suffered by Hardy's victimized clients would have gone without substantial redress. Given the nature of Hardy's offenses, no insurer or surety exists to compensate the victims for their losses. Instead, the injured clients are limited to pursuing Hardy for their relief. This court was also moved with empathy for the well being of Hardy's wife and nine children who were unaware of his criminal activities and depended on him as their sole source of support. Based on this court's perception of Hardy's eagerness to rebuild what he had destroyed in his family life and determination to ensure his victims were made whole, Hardy was sentenced to six months work-release followed by three years probation. As conditions of probation, Hardy was ordered to perform 1,000 hours of community service, continue in counseling for alcohol abuse, cooperate in proceedings to revoke his law license, and make full restitution to all victims. In connection with the latter condition, Hardy offered to set aside 50% of all income he received during the probationary period for restitution. Following Hardy's sentencing hearing, this court entered a restitution order containing the following language: "In order to satisfy this order to make full restitution, defendant is ordered as a condition of probation to pay one-half of any income he receives during the probationary period to the Clerk of the District Court. Such payments are to be made within 48 hours of defendant's receipt of the income, exclud-

ing weekends and holidays." *United States v. Hardy*, No. 86 CR 169, slip op. at 3–4 (N.D.Ill. August 15, 1986).

By allowing Hardy to work and generate income, it was hoped that the victims' chances of recovering what they had lost would be substantially enhanced. Similarly, by not assigning Hardy to a lengthy prison term the burden of raising and supporting nine children would not fall on the shoulders of one parent. Based on these considerations, the order mandating that half of Hardy's income be set aside for restitution became the cornerstone of Hardy's sentence.

As the government notes, however, Hardy's interpretation of his restitution obligations appears to conflict with the terms of the restitution order. First, the government argues that although the order states that half of all income received by Hardy is to be earmarked for Hardy's victims, Hardy unilaterally decided that the condition only referred to half of his after-tax income. Second, despite the fact Hardy is to account for all income he receives within two business days of receipt, Hardy appears to remit restitution funds whenever he deems it convenient.

 As to the government's first objection, this court agrees that Hardy's decision to unilaterally decide to reduce his restitution payment to one third of his gross income to account for taxes is inappropriate. Questions concerning the effect and meaning of the restitution order are properly directed to the court for resolution, not the probationer. Future attempts to usurp this court's role in interpreting the terms of probation will result in serious consequences.

Although the plain language of the order supports the conclusion that half of gross income is contemplated, the reading proposed by Hardy is not unreasonable. Had Hardy not pursued work as a self-employed paralegal but instead became an employee of a firm or corporation, the dispute concerning the proper basis for computing his restitution obligation would probably not have occurred. No payroll taxes are deducted from the payments Hardy receives for his paralegal work. As such, Hardy must make estimated tax payments to the state and federal government on a quarterly basis. The fact Hardy must account for his taxes in a manner different from most people should not work to his disadvantage. If Hardy were a payroll employee, he would be expected to set aside half of his take-home pay for restitution. The same result should occur in the present situation.

In reaching the conclusion that the restitution order only applies to Hardy's after-tax income, this court emphasizes that no future adjustments to this obligation will be made. Hardy is not entitled to deduct rent or any business expense from his income before computing the amount due under the restitution order. Any attempt to do so will be viewed as a breach of the restitution order and grounds for immediate revocation of probation.

 Hardy's laxity in timely forwarding sums due under the restitution order disturbs this court. The order explicitly states that restitution payments are to be made within two business days of the receipt of any income. Hardy's bimonthly accounting practices do not comport with the restitution guidelines. To ensure timely and accurate payments are made in the future, Hardy is ordered to submit biweekly reports to his probation officer containing the following information: (1) the name and phone number of the attorneys employing Hardy's services; (2) a breakdown of Hardy's time on projects to which he is assigned; and (3) an accounting of income received and amounts due for services rendered. On a quarterly basis, Hardy will submit proof that he has made estimated tax payments to the state and federal governments. This proof should consist of copies of the checks and the quarterly payment forms which Hardy forwards to the respective revenue services. Annually, Hardy will provide his probation officer with copies of his tax returns and a computation of what portion of any expected tax refund is due under the restitution order. Hardy will also submit an annual report detailing his restitution payments and restitution obligations for the year. This infor-

mation should be transmitted to the probation officer within two business days of filing the returns. Because of Hardy's low income, married status, and number of dependent children, this court assumes that Hardy's federal and state income taxes will be negligible. Since Hardy represents that one third of his gross income has been forwarded for estimated tax payments, significant refunds and restitution payments should be forthcoming.

■ This court rejects Hardy's conclusion that payments he now collects for legal services rendered prior to his sentencing are not subject to the terms of the restitution order. The order unambiguously states that half of all income *received* is to be remitted *within 48 hours* for restitution. Accounting for the $2,000 payment Hardy received in February 1987 and any other similar income shall be made by Hardy immediately.

Finally, this court is aware that Hardy's wife has instituted divorce proceedings and that Hardy is presently living alone. Hardy estimates his monthly living expenses to slightly exceed $1,000 a month. Included in Hardy's monthly budget is $645 for rent. According to a letter submitted by Hardy's wife, Hardy, with rare exceptions, does not furnish financial support to his family. Based on Hardy's estimates, his annual living expenses for 1987 were approximately $12,000. Yet, with under $1,400 in restitution payments for 1987, this court questions the veracity of Hardy's representation that he has submitted a third of his gross income for restitution. Hardy claims that he is experiencing difficulty making ends meet under the restitution order. However, even to a casual observer, a $645-a-month apartment is an extravagance which can be done without. Although Hardy defends the apartment on the basis that it is close to his family, this court is convinced that more reasonable housing is available in an area accessible to his children.

This court emphasizes that Hardy's primary purpose during probation is earning money to redress the losses suffered by his victims. Hardy's comfort or convenience are of no concern to this court. If Hardy's restitution obligations and living expenses cannot be met on his income, relocation to more affordable housing should occur. Failure to take reasonable steps to ensure compliance with the restitution order will be viewed as a willful violation of probation.

### III. CONCLUSION

Although the government has shown that Hardy violated the conditions of his probation by engaging in the practice of law without a license, this court is disinclined to revoke Hardy's probation under the circumstances surrounding his actions. However, Hardy's noncompliance with the terms of the restitution order constitute serious violations of his probation. Because a clearer picture of Hardy's financial dealings will be available in the near future, the government's motions are entered and continued until after Hardy has filed his 1987 tax returns and made all appropriate adjustments regarding his restitution obligations.[2]

IT IS SO ORDERED.

---

**2.** Hardy is also ordered to provide this court with copies of his tax returns and adjustment estimates when such documents are forwarded to Hardy's probation officer.