Nadine O. MONROE

v.

Daniel B. HORWITCH, et al.

Civ. No. 2:92cv00763 (PCD).

United States District Court,
D. Connecticut.

May 13, 1993.

---

28. *See* Donahue Memorandum at 12–13; O'Donoghue/Haurilak/Osso Memorandum at 15; Petrocelli/Locicero Memorandum at 10.

Nadine O. Monroe, pro se.

Atty. Henry Cohn, Asst. Atty. Gen., Special Litigation Dept., Hartford, CT, for defendants.

RULING ON PENDING MOTIONS

DORSEY, District Judge.

Plaintiff sues under 42 U.S.C. § 1983 alleging deprivation of her rights under the United States Constitution. Defendants move to dismiss.

## I. Background

Facts alleged in the complaint are assumed for purposes of a motion to dismiss. Plaintiff alleges that Conn.Gen.Stat. § 51–88,[1] forbidding the unauthorized practice of law, violates the First Amendment, freedom of speech, and the Fourteenth Amendment, equal protection and due process. Plaintiff further alleges that Conn.Gen.Stat. § 51–

---

1. Conn.Gen.Stat. § 51–88 proscribes the practice of law by persons not attorneys. Subsection (b) provides, "Any person who violates any provision of this section shall be fined not more than two hundred and fifty dollars or imprisoned not more than two months or both."

90a(2) and § 51–90c(b) [2] unconstitutionally grant defendants, the Statewide Grievance Committee (SGC) and the Statewide Bar Counsel (SBC), respectively, criminal jurisdiction.

In October 1991, plaintiff, a paralegal, advertised an offer to prepare papers for parties representing themselves in uncontested divorce actions. In November 1991, defendant Horwitch, acting for SBC, notified the Plaintiff that the SGC was investigating her, under Conn.Gen.Stat. § 51–88, for the unauthorized practice of law. Plaintiff did not testify at a March 1992 hearing, refusing to recognize the SGC's authority to conduct or to subpoena her to said hearing.

The SGC found, based on her advertisement, that plaintiff's actions constituted the unauthorized practice of law. Because plaintiff had ceased running the advertisement and had not served any clientele, the SGC recommended dismissing the complaint without prejudice. It recommended pursuit of the complaint under Practice Book 31(c) if she resumes offering the services.[3] In June 1992, defendant informed plaintiff of the SGC's decision. Plaintiff alleges that since that time, Horwitch has threatened her with prosecution for criminal contempt if she resumes the practice in question.

Defendants move to dismiss for lack of subject-matter jurisdiction, claiming that (1) the Eleventh Amendment bars this suit against the SGC owing to its status as a government agency; (2) the case lacks Article III "case or controversy" status. Alternatively, defendants claim that the Constitutional infringement claims, freedom of speech, due process and equal protection, fail to state a cause of action.

## II. Motion to Dismiss

### A. Criminal Jurisdiction

Plaintiff alleges, without legal authority, that Conn.Gen.Stat. § 51–90a(2) and § 51–90c(b) unconstitutionally grant criminal jurisdiction to defendants. Defendants have not addressed this allegation. Its merits are, therefore, not addressed.

### B. Eleventh Amendment Bar

#### 1. Statewide Grievance Committee

The Eleventh Amendment bars direct private suits against the state or its agencies unless the state has waived its immunity. *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684, 102 S.Ct. 3304, 3314, 73 L.Ed.2d 1057 (1981). Eleventh Amendment immunity cloaks the courts. *Harris v. Missouri Court of Appeals, Western Dist.*, 787 F.2d 427, 429 (8th Cir.1986), *cert. denied*, 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 114 (1986). In fulfilling its responsibility to regulate the practice of law in Connecticut, the SGC functions as "an arm of the court." *Sobocinski v. Grievance Committee*, 215 Conn. 517, 576 A.2d 532, 536 (1990). Accordingly, the SGC enjoys Eleventh Amendment immunity. *Abick v. State of Mich.*, 803 F.2d 874, 877 (6th Cir.1986).

The action is, therefore, dismissed as to the SGC.

#### 2. Statewide Bar Counsel

Neither the position of the individual defendant named nor the type of relief sought invokes an Eleventh Amendment bar. "A suit seeking prospective relief from a state official for a violation of federal constitutional rights is not considered to be a suit against the state." *Banerjee v. Roberts*, 641 F.Supp. 1093, 1100 (D.Conn.1986), citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 102–103, 104 S.Ct. 900, 909–910, 79 L.Ed.2d 67 (1984). Plaintiff seeks declaratory and injunctive, but not monetary, relief. "[*Edelman v. Jordan*, 415

---

**2.** Conn.Gen.Stat. §§ 51–90a and § 51–90c(b) each delineate the powers and duties of the State-wide Bar Committee and Counsel, respectively, to include, "investigate and prosecute complaints involving the violation by any person of any provision of section 51–88."

**3.** Conn.Prac.Book 31(c) provides in part: "A petition to restrain any person from engaging in the unauthorized practice of law not occurring in the actual presence of the court may be made by written complaint to the superior court in the judicial district where the violation occurs ... Such complaint may be prosecuted by the state's attorney, by the statewide bar counsel, or by any member of the bar by direction of the court ... Such complaints shall be proceeded with as civil actions."

U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ] and its progeny prohibit retrospective monetary relief, but they do not prevent prospective relief in the form of injunctions and declaratory judgments." *Galvin v. Lloyd,* 663 F.Supp. 1572, 1581 (D.Conn.1987).

### C. Article III "Case or Controversy" Requirement

In suits for purely prospective relief, Article III requires sufficiently adversarial interests. "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." *Kidder, Peabody & Co. v. Maxus Energy Corp.,* 925 F.2d 556, 562 (2nd Cir.), *cert. denied* — U.S. —, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991). The Declaratory Judgment Act, 28 U.S.C. § 2201, explicitly requires an "actual controversy," as does an action for injunctive relief. *See, e.g.,* *O'Shea v. Littleton,* 414 U.S. 488, 495, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1973).

The absence of a pending prosecution is not preclusive of the existence of a "case or controversy." "It is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974). *See also Anderson v. Vaughn,* 327 F.Supp. 101, 103 (D.Conn.1971). The logic undergirding this position, articulated in a patent case, is that "[a]bsent declaratory relief the party who allegedly breached the covenant not to compete would be required to wait until the adverse party brought suit before he could secure a judicial determination of the propriety of his conduct. One of the main purposes of the Declaratory Judgment Act was to allow a party to bring an action asserting his 'nonliability' in such a situation." *Bruhn v. STP Corp.,* 312 F.Supp. 903, 906 (D.Colo.1970).

"Case and controversy" issues require analysis of the parties' respective positions regarding the conduct in question. "[M]ajor stress should be placed on the 'definite' intention of plaintiff to take 'immediate' action to utilize its potential." *Wembley, Inc. v. Sperba Cravats, Inc.,* 315 F.2d 87, 90 (2nd Cir.1963). Plaintiff clearly evinces the desire and ability to provide the challenged services.

Plaintiff claims that only defendant's threats of prosecution prevent her from advertising and providing her services. The SGC investigated plaintiff's purported violation of Conn.Gen.Stat. § 51–88. The SGC recommended pursuit of the charge, if necessary, under Practice Book Rule 31(c). Such a recommendation clearly projects enforcement of Conn.Gen.Stat. § 51–88 if plaintiff resumes the conduct complained of.

Plaintiff's entitlement to a determination of her rights should not be contingent upon an immediate threat of prosecution under Conn. Gen.Stat. § 51–88. Defendant cannot bar plaintiff's claims for declaratory relief "simply by representing that it will not bring an action." *Kidder, Peabody & Co.,* 925 F.2d at 563. "Where the defendant voluntarily ceases the conduct at issue, however, the declaratory action is not necessarily mooted." *Id.* To render an issue moot, defendant must be not only unwilling to pursue the action, but also virtually unable to do so. Such is not here manifest. A similar standard applies for injunctive relief. "Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case; i.e., does not make the case moot … This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

### D. Constitutional Guarantees

■ A motion to dismiss under Rule 12(b)(6) must be decided solely on the facts alleged. *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985). Such a motion should be granted only where no set of facts consistent with the allegations could be proven that entitle plaintiffs to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue is not whether plaintiffs will prevail, but whether they should be afforded the opportunity to offer evidence to prove their claims. *Id.* "This caution against dismissal applies with even greater force where the complaint is *pro se,* see e.g. … *Haines v. Kerner,* 404 U.S. 519,

520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), or where the plaintiff complains of a civil rights violation, *see, e.g. Branum v. Clark,* 927 F.2d 698, 705 (2nd Cir.1991)." *Easton v. Sundram,* 947 F.2d 1011, 1015 (2nd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

### 1. First Amendment Freedom of Expression

■ The prohibition against unauthorized practice of law does not violate plaintiff's First Amendment right to freedom of speech. *Hackin v. State,* 102 Ariz. 218, 220, 427 P.2d 910, 912 (1967), *appeal dismissed,* 389 U.S. 143, 88 S.Ct. 325, 19 L.Ed.2d 347 (1967).[4] "The practice of law is above that of a mere privilege. It cannot be treated as a matter of grace or favor. But it may be granted only upon fulfillment of certain rigid qualifications established by this court. The defendant has not fulfilled these qualifications and he is not therefore entitled to exercise the privilege bestowed upon those who have." *Hackin,* 102 Ariz. at 220, 427 P.2d at 912. *Accord, Lawline v. American Bar Ass'n,* 738 F.Supp. 288, 296 (N.D.Ill.1990), *aff'd* 956 F.2d 1378 (7th Cir.1992); *Grievance Committee v. Dacey,* 154 Conn. 129, 222 A.2d 339, 349 (1966), *appeal dismissed,* 386 U.S. 683, 87 S.Ct. 1325, 18 L.Ed.2d 404 (1967); *Howard v. Superior Court,* 52 Cal.App.3d 722, 125 Cal.Rptr. 255, 257 (1975).

### 2. Fourteenth Amendment Due Process

Statutes forbidding the "unauthorized practice of law" are "sufficiently definite" to withstand constitutional scrutiny. *Hackin,* 102 Ariz. at 220, 427 P.2d at 912. *See also Wright v. Lane County Dist. Court,* 647 F.2d 940, 941 (9th Cir.1981).[5] An activity on the "outerboundaries" of the "practice of law," might be impermissibly vague. *Hackin,* 102 Ariz. at 221, 427 P.2d at 913. "[P]repara-

tion" of legal documents falls squarely within the boundaries.

Plaintiff's vulnerability to Conn.Gen.Stat. § 51–88 arises from her offer to prepare court documents in uncontested divorce actions. Preparation of legal documents is "commonly understood to be the practice of law." *Grievance Committee v. Dacey,* 222 A.2d at 349. What constitutes "preparation" of legal documents" is construed broadly. "Preparation of instruments, even with *preprinted forms,* involves more than a mere scrivener's duties" and, therefore, constitutes the practice of law. *State v. Buyers Service, Co.,* 292 S.C. 426, 357 S.E.2d 15, 17 (1987). *See also Pulse v. North Am. Land Title Co.,* 218 Mont. 275, 707 P.2d 1105, 1109 (1985) ("drafting or filling in of blanks in printed forms of instruments dealing with land" constitutes the practice of law); *Kennedy v. Bar Ass'n,* 316 Md. 646, 561 A.2d 200, 208 (1989) (preparation of legal documents in patent case constitutes the practice of law). Legal documents purport to allocate legal obligation.

■ The preparation of documents in simple divorce actions unequivocally constitutes the practice of law. *See, United States v. Hardy,* 681 F.Supp. 1326, 1328–29 (N.D.Ill. 1988) ("Common sense dictates that the drafting of even a simple complaint or an uncomplicated petition for dissolution of marriage requires at least some degree of legal knowledge or skill"); *McGiffert v. State ex rel. Stowe,* 366 So.2d 680, 683 (Ala.1979) ("It would seem to be clear that only a licensed lawyer may obtain an uncontested divorce for another person without violating the statute"); *Florida Bar v. Brumbaugh,* 355 So.2d 1186, 1194 (Fla.1978) (assistance in preparation of dissolution of marriage forms constitutes the practice of law); *State Bar v. Cramer,* 399 Mich. 116, 249 N.W.2d 1, 9

---

4. "Summary affirmances and dismissals for want of substantial federal question ... reject the specific challenges presented in the statement of jurisdiction and ... leave undisturbed the judgment appealed from. They ... prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977).

5. The Oregon prohibition on the unauthorized practice of law was upheld as Constitutional. The Court of Appeals dismissed the challenge for want of a substantial federal question rather than subject matter jurisdiction. *Wright,* 647 F.2d at 941.

(1976) (preparation of a client's no-fault divorce documents constitutes the practice of law). Such documents may assert, fail to assert, or acknowledge legal rights.

### 3. *Fourteenth Amendment Equal Protection*

The equal protection claim, which asserts differential treatment of paralegals, depending upon the existence of attorney supervision, appears to be one of first impression. Determination of the standard of scrutiny applicable is straightforward. No fundamental interest is at stake. "The Constitution does not create fundamental interests in particular types of employment." *Edelstein v. Wilentz*, 812 F.2d 128, 132 (3rd Cir.1987), citing *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). Nor is the class of individuals regulated inherently suspect. A suspect class is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerless as to command extraordinary protection from the majoritarian political process." *Massachusetts Bd. of Retirement*, 427 U.S. at 313, 96 S.Ct. at 2567.

In the absence of a "fundamental right" or "discrete or insular" group, the court must "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). More specifically, "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

The states have a "compelling interest" in the practice of professions. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2015–16, 44 L.Ed.2d 572 (1975). "As part of their power to protect the public health, safety and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Id.* The limitation of the practice of law to bar members "protects the public against rendition of legal services by unqualified persons." Conn.Prac. Book Rule 5.5 (comment). Such a limitation constitutes "protection" in that "the public can better be assured of the requisite responsibility and competence if the practice of law is confined to those who are subject to the requirements and regulations imposed upon members of the legal profession." ABA Model Code of Professional Responsibility, EC3–1 (1987).

A lawyer may delegate functions to a paralegal "so long as the lawyer supervises the delegated work and retains responsibility for their work." Conn.Prac.Book Rule 5.5 (comment). Oversight and accountability guarantee, so far as practicable, that the "requirements and regulations" imposed on lawyers will also insure the quality of work of supervised paralegals.[6] Prohibiting unsupervised paralegals from work with legal consequences is rationally related to public protection. *See Lawline v. American Bar Ass'n*, 956 F.2d 1378, 1385–86 (7th Cir.1992).

### III. *Motion for Rule 11 Sanctions*

Rule 11 sanctions are proper where it is clear that: 1) a reasonable inquiry into the basis for the pleading has not been made; 2) under existing precedents there is no chance of success; and 3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands.

*International Shipping v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.1989), *cert. denied sub nom. Golub v. Hydra Offshore, Inc.*, 493 U.S. 1003, 110 S.Ct. 563, 107

---

**6.** "The reason preparation of instruments by lay persons must be held to constitute the unauthorized practice of law is not for the economic protection of the legal profession. Rather, it is for the protection of the public from the poten-

tially severe economic and emotional consequences which may flow from erroneous advice given by persons untrained in the law." *State v. Buyers Service Co.*, 292 S.C. 426, 357 S.E.2d 15 (1987).

L.Ed.2d 558 (1989). The rule affirmatively requires an attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed, *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985), and the test is one of objective reasonableness. *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir. 1989).

Plaintiff's request for sanctions challenges every facet of the legal defense rendered. None of defendant's claims were patently unreasonable and collectively they formed an otherwise meritorious pleading. *Cross & Cross Properties*, 886 F.2d at 504–505. Plaintiff's motion for sanctions is therefore denied.

## VI. *Conclusion*

Defendant's motion to dismiss (document # 10) is granted. Plaintiff's motion for summary judgment (document # 13) is denied as moot. Plaintiff's motion for sanctions (document # 16) is denied. Plaintiff's motion for reconsideration (document # 18) is granted; upon reconsideration, however, in accordance with this ruling, the prior order is adhered to.

SO ORDERED.