(No. 56804.—

*In re* RALPH M. SCHELLY, Attorney, Respondent.

*Opinion filed February 18, 1983.*

WARD, J., took no part.

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago, for respondent.

JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint charging the respondent, Ralph M. Schelly, with conduct which tends to defeat the administration of justice and bring the legal profession into disrepute. It alleged that respondent wilfully aided and assisted an unlicensed person in the practice of law in violation of Canon 3, DR 3—101(A) of

the Illinois Code of Professional Responsibility (Illinois State Bar Association 1970). The hearing panel found respondent guilty and recommended a 90-day suspension. The Review Board adopted the findings of the hearing panel but recommended a six-month suspension.

Respondent was admitted to the Illinois bar in 1953, and his practice included extensive community service work and *pro bono* service in several ethnic communities.

In 1975, respondent employed Bernard Koenig, a disbarred attorney, to work in his office as a law clerk. Respondent testified that he hired Koenig because he was an old friend and because Koenig told him he was unable to find work. He limited Koenig's responsibilities to preparing case files, updating the docket book, and requesting continuances when respondent was indisposed.

In August 1976, respondent instructed Koenig to appear in court and seek continuances on two of his cases while he was on vacation. Instead, Koenig tried one case entitled Santiago v. Crosby before a jury and argued a motion in the other case, People v. Cano. When respondent learned of Koenig's actions, he immediately fired him. But Koenig prevailed upon respondent to give him another chance and respondent did so.

As a result of Koenig's activities, the Administrator initiated contempt proceedings against him in 1977 for practicing law after his disbarment. This court ordered an evidentiary hearing. Respondent represented Koenig at these proceedings. In addition to Koenig's actions in the Santiago and Cano cases, testimony at these proceedings also showed that after his disbarment, Koenig had represented two of his former clients in real estate transactions and had acted as administrator of the estate of a former client's brother. In Koenig's defense, respondent offered the testimony of an examining psychiatrist who said that Koenig's memory and judgment were

permanently impaired by a condition known as organic brain syndrome associated with alcoholism. The psychiatrist testified that Koenig's ability to choose between right and wrong was impaired and unreliable.

While the contempt proceedings were pending, Koenig initiated a divorce action entitled Soboj v. Soboj for an old client's girlfriend. In addition, he offered to represent the defendant in a civil case captioned Vleck v. Niesler. In both cases Koenig filed appearances under the respondent's name.

Mrs. Soboj testified she paid Koenig $1,400 to represent her. She said she met with Koenig in the evening at respondent's office on three separate occasions to discuss her case. On August 16, 1978, respondent appeared in court on behalf of Mrs. Soboj and argued an injunction motion. Mrs. Soboj testified that Koenig told her respondent was working with him on the case and would argue the motion because he was a friend of the judge. After arguing the motion, respondent took no further action in the Soboj case. He admitted before the hearing panel that he did not review the case file prior to or after arguing the motion.

In September of 1978, notice of the taking of Mrs. Soboj's discovery deposition was mailed to respondent's office. On October 16, 1978, Koenig, but not respondent, appeared with Mrs. Soboj at opposing counsel's office and actively represented her at the deposition. Mrs. Soboj testified that she subsequently became dissatisfied with Koenig's representation and retained new counsel.

In the Vleck case, Koenig represented the defendant at his deposition in November of 1978. On January 8, 1979, Koenig appeared in court on the Vleck case and argued against a motion to compel the production of documents.

On January 26, 1979, the contempt proceedings against Koenig concluded. This court found Koenig in

contempt of court for practicing without a license based on his actions in the Santiago and Cano cases and the other three matters. He was ordered incarcerated for 10 days.

On February 20, 1979, respondent was personally served with a motion for sanctions for failure to produce documents in the Vleck matter. The motion was scheduled for hearing on February 27, 1979. When handed the notice of motion, respondent stated: "This is Koenig's" and took the papers to Koenig. Respondent testified that he said this and gave the papers to Koenig because Koenig's job responsibilities included producing documents. But Koenig subsequently appeared in court, answered the motion and drafted the court order. William Willen, opposing counsel in Vleck, testified that Koenig discussed settling the case with him for $1,500 but withdrew the offer when Willen accepted. At this point, Willen said he became suspicious and called the Attorney Registration and Disciplinary Commission to determine if Koenig was licensed as an attorney. He discovered he was not.

On June 4, 1979, respondent sent Koenig to court to continue a case scheduled for trial. Instead, Koenig appeared in court and tried the case to judgment.

On June 23, 1979, Willen telephoned respondent and told him Koenig had represented respondent's client, Niesler, at his deposition, in court on certain motions, and in settlement negotiations. Respondent said he had no recollection of the case and that Koenig was only authorized to seek continuances. Willen said he informed respondent that if he knew of Koenig's activities he would be guilty of aiding and assisting in the unauthorized practice of law and that he had no choice but to report this activity to the Attorney Registration and Disciplinary Commission. Respondent told Willen he was free to do as he wished.

In October 1979 the Administrator wrote respondent inquiring about the above charges. Respondent denied them. In June of 1980 the Administrator filed formal charges against respondent and a hearing date was set. In August 1980 respondent terminated Koenig's employment.

Before the hearing panel, an examining psychiatrist testified that respondent's personality was such that he found it his duty to give aid and sustenance to an old friend in distress; that he could not face himself if he turned his back on an old friend. The psychiatrist said, however, that respondent was neither neurotic nor psychotic, had a good sense of reality, and was quite chastened by this experience. In his opinion, respondent would not repeat his mistake. Respondent also called witnesses who testified that he had an excellent reputation for his integrity, compassion and professionalism. Respondent testified that after each of Koenig's transgressions, he reprimanded him, threatened him with discharge, docked his pay, and prohibited personal phone calls.

Respondent acknowledges that his employee engaged in the unauthorized practice of law. He argues, however, that the hearing panel's finding is not supported by clear and convincing evidence, because there is no evidence respondent affirmatively aided or assisted Koenig. He maintains he had no knowledge of Koenig's transgressions until after the fact and that he then tried to prevent further occurrences by disciplining Koenig with increasing severity until Koenig's ultimate discharge.

This court previously has not had occasion to discipline an attorney for aiding a person in the unauthorized practice of law. But other jurisdictions have imposed discipline under these circumstances. *Crawford v. State Bar* (1960), 54 Cal. 2d 659, 355 P.2d 490, 7 Cal. Rptr. 746 (public reproof for allowing disbarred father to re-

main in the law office as a law clerk and tax consultant); *In re Lerner* (1946), 270 A.D. 602, 61 N.Y.S.2d 661 (attorney disbarred for allowing disbarred attorney to hold himself out as an attorney and practice law from his office); *In re Lacy* (1937), 234 Mo. App. 71, 112 S.W.2d 594 (attorney disciplined for hiring disbarred attorney to work in his law office).

The hearing panel found from the facts presented that respondent's conduct violated Canon 3, because he failed to adequately supervise his employee and take steps to prevent the unauthorized practice of law. Such findings of fact by the hearing panel are entitled to great weight when the panel is acting as a trier of fact. (*In re Hopper* (1981), 85 Ill. 2d 318, 323.) It is clear from the record that respondent knew of Koenig's propensity to engage in the unauthorized practice of law. Yet, he did not restrict or supervise Koenig's work to prevent him from misleading the public and holding himself out as a lawyer. We find clear and convincing evidence in the record supporting the finding the respondent aided and assisted in the unauthorized practice of law.

Respondent admits he exercised bad judgment in retaining Koenig in his employ, but offers as mitigation his excellent record, the lack of a dishonest motive and the want of precedential guidance on the propriety of hiring a disbarred attorney. He maintains the discipline recommended by both the hearing panel and Review Board is unduly harsh and that censure is the appropriate sanction. He submits that the Review Board erred by retrospectively applying *In re Kuta* (1981), 86 Ill. 2d 154, to double the measure of discipline recommended by the hearing panel.

In *Kuta*, this court said that employment of a disbarred or suspended attorney as a law clerk was improper, because of the opportunity and temptation it offered the disbarred or suspended attorney to practice

law, and because it lessens the public's regard for the effectiveness of our disciplinary system. The case at bar demonstrates why it is improper to hire a disbarred or suspended attorney. But we do not read the Review Board's recommendation as relying on *Kuta* to discipline respondent. It was not respondent's hiring of a disbarred attorney, by itself, that formed the basis of the Review Board's recommendation. Rather, the recommendation was based on respondent's conduct during Koenig's employ.

It is clear from respondent's representation of Koenig in the contempt proceedings that he knew of Koenig's propensity to practice law. Yet he continued to employ him in the same capacity with the same responsibility, and persistently left Koenig in a position from which he could hold himself out as a lawyer. Respondent's behavior enabled Koenig to inflict himself on the public in direct defiance of this court's disbarment order.

The purpose of our disciplinary process is to safeguard the public, maintain the integrity of the profession, and protect the administration of justice from reproach. (*In re Saladino* (1978), 71 Ill. 2d 263.) Suspension is a proper punishment where corrupt motive and moral turpitude are not clearly shown. (*In re Masters* (1982), 91 Ill. 2d 413; *In re Chapman* (1978), 69 Ill. 2d 494; *In re Ahern* (1961), 23 Ill. 2d 69.) We have considered respondent's long and admirable *pro bono* service to many ethnic communities and the high esteem in which he is held by those who testified or filed statements on his behalf. In weighing these factors against respondent's conduct, it is our opinion that the appropriate sanction in this case is suspension for three months.

*Respondent suspended.*

JUSTICE WARD took no part in the consideration or decision of this case.