Eli SUTKER, et al.,
Plaintiffs-Appellants,

v.

ILLINOIS STATE DENTAL SOCIETY,
et al., Defendants-Appellees.

No. 85–2466.

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1986.

Decided Dec. 23, 1986.

Rehearing and Rehearing En Banc
Denied Feb. 2, 1987.

George C. Pontikes, Foss Schuman Drake & Barnard, Chicago, Ill., for plaintiffs-appellants.

Russell M. Pelton, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants-appellees.

Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This appeal presents an equal protection challenge [1] to that portion of the Illinois

---

1. The appellants' complaint challenged the statutory scheme both in terms of equal protection and due process analyses. The district court quite properly treated both claims together because the standard is the same. On appeal, the appellants appear to rely solely on equal protec-

Dental Practice Act (Act), Ill.Ann.Stat. ch. 111, ¶¶ 2202 *et seq.* (Smith-Hurd 1978 & Supp.1985),[2] that permits only dentists to take impressions and fit dentures for patients. The district court held that this requirement did not violate the equal protection clause. We affirm.

## I

### Statement of the Case

The appellants are denturists. They make and repair dentures. However, under the Act, only licensed dentists can fit dentures to the patient's mouth. Therefore, while the denturists may manufacture appliances to fill orders placed by licensed dentists, they may not deal directly with patients. It is not disputed that the training and education of denturists is different from that required for dentists. Nevertheless, the denturists submit that they are qualified to undertake the task of fitting dentures.

In 1978, appellants brought suit in the district court challenging the constitutionality of the Act on several different grounds. On April 6, 1979, the district court dismissed the complaint on the ground that it did not raise a substantial federal question. R.43. Appellants appealed the dismissal of their equal protection and due process claims. On December 3, 1980, this court, by unpublished order, reversed the judgment of the district court and remanded the case for an evidentiary hearing. *Schiller*

v. *Illinois State Dental Soc'y* (7th Cir. 1980) (unpublished order) [645 F.2d 73 (table)]; Appellants' App. at 17. This court decided that at least "some evidentiary inquiry" was required to decide whether the challenged sections of the statute were rationally related to a legitimate governmental purpose. *See* Appellants' App. at 19–20.

On remand, the appellants filed an amended complaint that set forth four counts, including the due process and equal protection questions addressed by this court on the first appeal. On February 15, 1983, the district judge dismissed all claims except the equal protection and due process claims. On June 10, 1985, the court undertook the evidentiary hearing mandated by this court. On July 29, 1985, judgment was entered for the appellees. This appeal followed.

## II

### Opinion of the District Court

The district court rendered an oral opinion in this case. The district judge stated that "the issue is whether or not there is a rational basis for this legislation." Tr. at 1840. In his view, the denturist's own evidence "establishes that the law is rational." *Id.* at 1842. He noted that several experts had testified that, at its best, the process of fitting dentures should encompass an oral examination and the interpretation of x-rays. *Id.* He found that the denturists

---

tion analysis and, in deciding the case, we have articulated our result in terms of equal protection analysis. To the extent that, on appeal, the appellants may rely on due process analysis, the result would be the same. *See Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

**2.** The Illinois Dental Practice Act, Ill.Ann.Stat. ch. 111, ¶¶ 2202 *et seq.* (Smith-Hurd 1978 & Supp.1985), which is challenged by the appellants, has been repealed since the initiation of this suit in the district court and the filing of the briefs in this appeal. The new Illinois Dental Practice Act, effective January 1, 1986, is codified at Ill.Ann.Stat. ch. 111, ¶¶ 2301 *et seq.* (Smith-Hurd Supp.1986).

The parties to this appeal, in supplemental letters requested by this court, agree that the

new Illinois Dental Practice Act includes, without material change, the challenged restrictions on the practice of denturism. This appeal, therefore, is not moot because "[t]he substance of the statutory and regulatory complex remains." *Keyishian v. Board of Regents,* 385 U.S. 589, 596, 87 S.Ct. 675, 680, 17 L.Ed.2d 629 (1967); *see Schall v. Martin,* 467 U.S. 253, 256 n. 2, 104 S.Ct. 2403, 2405 n. 2, 81 L.Ed.2d 207 (1984); *Brockington v. Rhodes,* 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969) (per curiam).

We remind counsel that, while a case is *sub judice,* they have a continuing obligation to inform the court of changes in the law. That obligation is applicable even when counsel believe that the change is of little or no consequence.

634

involved in this litigation "whatever their experience, are not trained to take x-rays, to interpret x-rays and to do mouth examinations as dentists would do." *Id.* at 1843. He also noted that there was evidence in the record, submitted by the defendants, which demonstrated that many oral abnormalities associated with fitting dentures can easily go undetected. While denturists may be able to provide the appliance at a lower cost, "[t]here is no obligation on the part of the Illinois Legislature to adopt a system that provides dentures at the lowest possible cost." *Id.* at 1850. "[T]he State may consider quality as well as cost in deciding what system it will adopt." *Id.* at 1851. Finally, the district court noted:

> It seems to me that the case before the Court presents a classic example of a subject which is proper for legislation rather than judicial decision. The plaintiffs have tried repeatedly and without success to induce the Legislature to adopt their point of view, and it is natural that they would turn to the Court as a substitute forum, but that is not the role of the Court, to serve as a substitute forum for disappointed lobbyists.

*Id.*

## III

### The Merits

We believe that the district court correctly identified the controlling principle of law and correctly applied that principle to the facts of this case.

**3.** In *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980), the Supreme Court, dealing with the application of the rational basis test in the area of economic and social legislation, admitted that "this Court in earlier cases has not been altogether consistent in its pronouncements in this area." *Id.* at 174, 101 S.Ct. at 459. After setting forth the disparate approaches of *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78–79, 31 S.Ct. 337, 340–41, 55 L.Ed. 369 (1911) ("When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.") and *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct.

### A.

■ The classification at issue here—Illinois' distinction between dentists and non-dentists (including denturists)—implicates no concern which requires, under existing precedent, either strict or heightened scrutiny. Therefore, we "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam); *see Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Doe v. Edgar,* 721 F.2d 619, 622 (7th Cir.1983); *Record Head Corp. v. Sachen,* 682 F.2d 672, 679 (7th Cir.1982).

The Supreme Court has stated, on several occasions, that this rationality standard is not "toothless." *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976); *see Zobel v. Williams,* 457 U.S. 55, 65, 102 S.Ct. 2309, 2315, 72 L.Ed.2d 672 (1982); *Sklar v. Byrne,* 727 F.2d 633, 640 (7th Cir.1984). However, it has been a matter of some ambiguity as to how sharp its teeth are. As the Supreme Court has frankly admitted, its use of several different formulations to describe the operations of the test has contributed to that ambiguity. *See United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174–77, 176 n. 10, 101 S.Ct. 453, 459–61, 460 n. 10, 66 L.Ed.2d 368 (1980).[3]

560, 561–62, 64 L.Ed. 989 (1920) ("[T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation....") and their respective progeny, Justice Rehnquist wrote:

> The most arrogant legal scholar would not claim that all of these cases applied a uniform or consistent test under equal protection principles. And realistically speaking, we can be no more certain that this opinion will remain undisturbed than were those who joined the opinion in *Lindsley, supra, Royster Guano Co., supra,* or any of the other cases referred to in this opinion and in the dissenting opinion.

449 U.S. at 177 n. 10, 101 S.Ct. at 460 n. 10.

These inconsistencies in verbal formulation and, consequently, in methodology need not concern us in deciding the case before us today. The Supreme Court has consistently held that, when matters of health and safety are concerned, great judicial deference is owed to the legislative judgment. Indeed, the "law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955). As Justice Brennan wrote, in *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981):

> This Court has made clear that a legislature need not "strike at all evils at the same time or in the same way," *Semler v. Oregon State Board of Dental Examiners*, 294 U.S. 608, 610 [55 S.Ct. 570, 571, 79 L.Ed. 1086] (1935), and that a legislature "may implement [its] program step by step, ... adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *New Orleans v. Dukes*, 427 U.S., at 303 [96 S.Ct., at 2517]. See also *Katzenbach v. Morgan*, 384 U.S. 641, 657 [86 S.Ct. 1717, 1727, 16 L.Ed.2d 828] (1966); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489 [75 S.Ct. 461, 465, 99 L.Ed. 563] (1955); *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110 [69 S.Ct. 463, 465, 93 L.Ed. 533] (1949). The Equal Protection Clause does not deny the State of Minnesota the authority to ban one type of milk container conceded to cause environmental problems, merely because another type, already established in the market, is permitted to continue in use. Whether *in fact* the Act will promote more environmentally desirable milk packaging is not the question: the Equal Protection Clause is satisfied by our conclusion that the Minnesota Legislature *could rationally have decided* that its ban on plastic nonreturnable milk jugs might foster greater use of environmentally desirable alternatives.

*Id.* at 466, 101 S.Ct. at 725.

This court's precedent has evidenced the same deference for the legislative judgment in matters of health and safety. As Judge Cummings wrote in *Record Head Corp.*, "in deciding what means to employ, [the] legislating body can rely on actual or hypothetical facts, and can attack only certain aspects of a problem without having to justify its failure to fashion a comprehensive solution." 682 F.2d at 679; *accord Friedman v. Rogers*, 440 U.S. 1, 17–19, 99 S.Ct. 887, 898–99, 59 L.Ed.2d 100 (1979). *Lee Optical* and *Friedman* also make clear that this deference to legislative judgment in matters of health and safety extends to cases involving the regulation of licensed professions. *Friedman*, 440 U.S. 1, 99 S.Ct. 887; *Lee Optical*, 348 U.S. 483, 75 S.Ct. 461; *see also Watson v. Maryland*, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910). Indeed, the Ninth Circuit, faced with a situation quite similar to our own, relied upon *Lee Optical* in upholding a California distinction between graduates of traditional medical schools and graduates of schools of osteopathic medicine. *Brandwein v. California Bd. of Osteopathic Examiners*, 708 F.2d 1466 (9th Cir.1983). In discussing the application of the "rational basis test," the court wrote:

> In applying the rational relation test, the Court has also stressed the heavy procedural burden placed upon the plaintiff in proving his case. The plaintiff in a challenge to a legislative classification, reviewed under this standard, must prove that the facts on which the legislature may have relied in shaping the classification "could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. at 111, 99 S.Ct. at 949. "The admission that facts are arguable" is enough to justify the legislative judgment. *Id.* at 112, 99 S.Ct. at 950. And in reviewing

the rationality of the classification, a court may hypothesize legislative purposes: "where there are plausible reasons for Congress' action, our inquiry is at an end. It is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision,' *Flemming v. Nestor,* 363 U.S. [603], at 612 [80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435], because this Court has never insisted that a legislative body articulate its reasons for enacting a statute." *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

*Id.* at 1470–71.

### B.

■■■ The Act is clearly an exercise of Illinois' police power authority to regulate matters of health and safety. The legislature stated the Act's purpose as follows:

The practice of dentistry in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the dental profession merit and receive the confidence of the public and that only qualified persons be permitted to practice dentistry in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes.

Ill.Ann.Stat. ch. 111, ¶ 2202 (Smith-Hurd 1978 & Supp.1985).[4] Moreover, as the district court noted, there is ample evidence in the record, including that supplied by the appellants, to support the legislature's

judgment that the fitting of dentures should be a procedure entrusted exclusively to dentists. In making this determination, the legislature was not obliged to permit everyone who might be able to fit dentures to do so. It was quite acceptable, as far as the equal protection clause is concerned, for the legislature to limit the function to that group which it deemed would, over time, provide the public with the safest, if not the least expensive, service. A state legislature may deal with a health or safety matter "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Lee Optical,* 348 U.S. at 489, 75 S.Ct. at 465. Nor was it necessary for the legislature to subdivide the process of obtaining dentures and to limit the exclusive control of the dentist to those parts of the process where his participation is essential. As Justice Schaefer wrote for the Supreme Court of Illinois in *People ex rel. Chicago Dental Soc'y v. A.A.A. Dental Laboratories,* 8 Ill.2d 330, 134 N.E.2d 285, *appeal dismissed,* 352 U.S. 863, 77 S.Ct. 97, 1 L.Ed.2d 73 (want of substantial federal question),[5] *reh'g denied,* 352 U.S. 919, 77 S.Ct. 212, 1 L.Ed.2d 124 (1956), the legislature may:

if it sees fit, go further and insure that responsibility to the patient shall not be fragmented, and it may focus that responsibility upon a member of the profession which it regulates. By that means, compliance with the requirement that the dentist shall fit the appliance in place and make the necessary adjustments may be enhanced, protection against inferior workmanship and materials and exorbi-

---

**4.** The identical provision has been recodified at Ill.Ann.Stat. ch. 111, ¶ 2302 (Smith-Hurd Supp. 1986).

**5.** As this court pointed out in its earlier opinion in this case, the Supreme Court's dismissal of *People ex rel. Chicago Dental Soc'y v. A.A.A. Dental Laboratories,* 8 Ill.2d 330, 134 N.E.2d 285, *appeal dismissed,* 352 U.S. 863, 77 S.Ct. 97, 1 L.Ed.2d 73, *reh'g denied,* 352 U.S. 919, 77 S.Ct. 212, 1 L.Ed.2d 124 (1956), for want of a substantial federal question does not resolve the present challenge to the statute. *Schiller v. Illinois State Dental Soc'y,* No. 79–1529 at 4–6 n. 2 (7th Cir.

Dec. 3, 1980) (unpublished order) [645 F.2d 73 (table) ]; Appellants' App. at 20–22. The issues presented to the Supreme Court in *A.A.A. Dental* were not the same as those presented here. *Id.* The precedential effect of a summary disposition can extend no further than "the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977); *see Illinois State Bd. of Elections v. Socialist Worker's Party,* 440 U.S. 173, 182–83, 99 S.Ct. 983, 989–90, 59 L.Ed.2d 230 (1979).

tant prices may be ensured, and the dentist can be certain that the work for his patients is done by those in whose integrity, competence and skill he has confidence.

8 Ill.2d at 335, 134 N.E.2d at 289.

However, the appellants argue that "a less rigid statute can act as a doorway to economic and professional freedom for denturists. But, more importantly, it is the missing link which would allow the disadvantaged and elderly to secure proper denture health care." Appellants' Br. at 43. As the district court emphatically noted, this argument must be made to the Illinois Legislature, not the federal court. It is the legislature's prerogative to determine which innovations in health care are acceptable risks and which are not.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.