LAWLINE, et al., Plaintiffs,

v.

The **AMERICAN BAR ASSOCIATION,**
et al., Defendants.

No. 88 C 7203.

United States District Court,
N.D. Illinois, E.D.

May 24, 1990.

Thomas O'Connell Holstein, Chicago, Ill., Alfred L. Levinson, Park Ridge, Ill., for plaintiffs.

Kathleen K. Flahaven, Asst. Atty. Gen., Neil F. Hartigan, Illinois Atty. Gen., Chicago, Ill., for Supreme Court of Ill., and Illinois Supreme Court Committee on Professional Responsibility.

Darryl DePriest, Alison Breslauer, Gen. Counsel, American Bar Ass'n, Chicago, Ill., for American Bar Assn.

Robert A. Creamer, Richard L. Reinish, A. Benjamin Goldgar, Keck, Mahin & Cate,

Dennis A. Rendleman, Gen. Counsel, Ill. State Bar Ass'n, Chicago, Ill., for Illinois State Bar Assn.

Rene A. Torrado, Jr., Stuart D. Kenney, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Chicago Bar Assn.

Anton R. Valukas, U.S. Atty., Gillum Ferguson, Asst. U.S. Atty., Chicago, Ill., for Clifford Meacham and M. Scott Michel.

J. Scott Renfro, Attorney Registration & Disciplinary Com'n, Chicago, Ill., for Attorney Registration & Disciplinary Comn.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

### I. BACKGROUND FACTS

Lawline is a non-incorporated association of lawyers, paralegals and laypersons founded in 1978 by plaintiff Thomas O'Connell Holstein, an Illinois attorney. According to plaintiffs' voluminous complaint [1] the purposes of Lawline are fourfold:

 (1) to use law students, paralegals, and lawyers to answer the legal questions of members of the general public over the telephone without charge and to assist them in *pro se* representation and routine quasi-administrative proceedings;

 (2) to make referrals to public and private agencies providing free legal services;

 (3) to refer members of the public with limited financial resources to young lawyers who charge reduced fees; and

 (4) to create a "prototype" legal delivery system as an alternative to legal aid which would be subsidized by referral fees.

(¶ 29.[2])

In accordance with these purposes, for ten years the lawyers, paralegals, and laypersons of Lawline have answered legal questions over the telephone, have assisted litigants acting *pro se,* and have made attorney referrals. (¶¶ 30–32.) Although Lawline concentrates its services in Illinois, Indiana and Wisconsin, it also provides similar but more limited services on a national level through a toll free telephone number, 1–800–553–KNOW. Over 500,000 persons have been served by Lawline, which advertises extensively throughout the United States. (¶ 38.)

Three individual plaintiffs bring this action: Mr. Holstein, managing director and one of the supervising attorneys for Lawline, Le Nore Nelson, officer and head paralegal for Lawline, and Joyce Novak, a layperson who received legal information over the telephone from Lawline (in this instance from Ms. Nelson) and used this information to, *pro se,* successfully obtain a discharge of her debts in bankruptcy. (¶¶ 1, 3–4.)

Plaintiffs bring this suit against myriad defendants: the American Bar Association ("ABA"), the Illinois State Bar Association ("ISBA"), the Chicago Bar Association ("CBA"), the Justices of the Illinois Supreme Court in their official capacities and the members of the Illinois Supreme Court Committee on Professional Responsibility (collectively "Justices"), the members of the Attorney Registration and Disciplinary Commission of the Illinois Supreme Court ("ARDC"), members of the Executive Committee of this court in their official capacities ("Executive Committee"), and M. Scott Michel, the United States Trustee for the Northern District of Illinois and his assistant Clifford L. Meacham (collectively "U.S. Trustee"). (¶¶ 6–15.)

Plaintiffs challenge the defendants' promulgation, adoption, and enforcement of certain portions of the ABA Model Code of Professional Responsibility ("ABA Model Code"). The ABA Model Code and ABA Model Rules prohibit lawyers from forming

---

**1.** Federal Rule of Civil Procedure 8 requires a complaint to contain a "short and plain" statement of the claim arranged in "simple, concise, and direct" averments. Plaintiffs have organized their complaint in over three hundred numbered paragraphs consuming more than one hundred pages. The complaint is often confusing, needlessly repetitious, and permeated with unnecessary evidentiary allegations.

Thus, in addition to the deficiencies discussed in detail in this opinion, Rule 8 provides an additional basis for dismissing plaintiffs' complaint. *See Mutuelle Generale Francaise Vie v. Life Assurance Co.,* 688 F.Supp. 386, 391 (N.D.Ill.1988).

**2.** All paragraph references are to plaintiffs' first amended complaint.

partnerships with nonlawyers if any activities of the partnership consist of the practice of law. Plaintiffs claim that this prohibition violates the Sherman Antitrust Act and plaintiffs' constitutional rights.

At the risk of overusing acronyms, the posture of this case is as follows: defendants ABA, ISBA, CBA, Justices, ARDC, and U.S. Trustee all have moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Executive Committee is unrepresented by counsel and has made no motions in this case. For the following reasons the defendants' motions to dismiss must be granted.

## II. DISCUSSION

In ruling on a motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) the court must presume all of the well-pleaded allegations of plaintiffs' complaint to be true. *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). In addition, the court must view those allegations in the light most favorable to the plaintiffs. *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal is proper only if it appears "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. *ABA Model Code*

Plaintiffs challenge the promulgation, adoption, and enforcement of certain provisions of the ABA Model Code.

In 1978 the Illinois Supreme Court created the Committee on Professional Responsibility to prepare a draft Code of Professional Responsibility for attorneys in Illinois. Using the ABA Model Code as a blueprint from which to work, the committee prepared a draft Code of Professional Responsibility and transmitted its proposal to the court in December of 1978.

After considering the comments of various individuals and bar associations, on June 3, 1980 the court officially adopted the Illinois Code of Professional Responsibility. (¶ 73; Committee Comments, Preface, Illinois Code of Professional Responsibility, *Ill.Ann.Stat.* ch. 110A, Article VIII [Smith–Hurd 1985].) The three provisions of the Illinois Code of Professional Responsibility at issue here are identical to their ABA Model Code counterparts. *Compare* Illinois Code of Professional Responsibility Canon 3, Rule 3–101(A) and Rule 3–103 *to* ABA Model Code Canon 3, DR 3–101(A) and DR 3–103.

In 1982 the District Court for the Northern District of Illinois also embraced the ABA Model Code. General Rule 3.54(b) of this court states that any attorney authorized to practice before this court who fails to abide by the provisions of the ABA Model Code "may be disbarred from further practice before this Court." The Executive Committee has exclusive responsibility for enforcement of General Rule 3.54. General Rule 3.51.

Plaintiffs challenge the promulgation, adoption, and enforcement of certain portions of the ABA Model Code. They challenge three provisions in particular: (1) ABA Model Code Canon 3, which states that "[a] lawyer should assist in preventing the unauthorized practice of law"; (2) Disciplinary Rule 3–101(A), which states that "[a] lawyer shall not aid a nonlawyer in the unauthorized practice of law"; and (3) Disciplinary Rule 3–103 which states that "[a] lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law." (¶ 19.) Plaintiffs claim that these three provisions violate federal antitrust law and certain constitutional provisions.[3]

---

**3.** Plaintiffs also challenge "Rule 3–101(a) and 3–103(a) of the newly proposed Illinois Code." (*See, e.g.,* ¶ 19.)

On February 8, 1990 the Illinois Supreme Court repealed the Code of Professional Responsibility and replaced it with the Illinois Rules of Professional Conduct ("New Rules"). *See* Order entered February 8, 1990, reported in the Chicago Daily Law Bulletin, Feb. 14, 1990, at 4–6. The New Rules take effect August 1, 1990.

The Justices argue that a challenge to the New Rules is not yet ripe. However, the court need not address the ripeness issue: the substantial similarity between the New Rules and the challenged language of the ABA Model Code compels the same result in this case. *See, e.g.,* New

### B. Count I: Sherman Antitrust Act

Count I of plaintiffs' complaint alleges that defendants' promulgation, adoption, and enforcement of the ABA Model Code provisions at issue violate the Sherman Act, 15 U.S.C. Sections 1 and 2. For analytic convenience the defendants in this case can be divided into two groups: the private associations (ABA, ISBA, and CBA) and the governmental actors (the Justices, the Executive Committee, and the U.S. Trustee).

#### 1. The Private Associations

It is undisputed that if plaintiffs are restrained from practicing law, it is because of the Illinois Supreme Court's enactment of the Illinois Code of Professional Responsibility and this court's adoption of General Rule 3.54. However, in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) the Supreme Court held that no violation of the Sherman Act can be made out where a restraint upon trade or monopolization is the result of valid governmental action as opposed to private action. 365 U.S. at 136, 81 S.Ct. at 529. Moreover, the Sherman Act does not prohibit persons from associating together in an attempt to persuade a governmental entity to take particular action with respect to a law that would produce a restraint or a monopoly. *Id.*

Citing *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988) plaintiffs seek to escape the effect of the *Noerr* doctrine by arguing that a private association's promulgation and adoption of particular standards do not qualify for *Noerr* immunity simply because those standards are routinely adopted by state and local governments. However, as the CBA ably notes,

this case is unlike *Allied Tube*. In *Allied Tube* the anticompetitive effect at issue was caused solely by a private association's action—in that case exclusion of plaintiff's product from the association's code. No damages were imposed for the incorporation of that code by any government. 108 S.Ct. at 1937. The Court held:

> [A]t least where, as here, an economically interested party exercises decision-making authority in formulating a product standard for a private association that comprises market participants, that party enjoys no *Noerr* immunity from any antitrust liability flowing from the effect the standard has *of its own force* in the marketplace.

108 S.Ct. at 1942 (emphasis added).

■ In contrast, where governmental imposition of a standard is the sole source of a trade restraint, "those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint." *Allied Tube*, 108 S.Ct. at 1936. Thus, even if the defendant private associations in this case participated in the process that lead to adoption of provisions of the ABA Model Code, they are immune from antitrust liability because plaintiffs have plead no facts demonstrating that the Code has any significant effect beyond that attributable to its adoption and enforcement by the Illinois Supreme Court and this court.[4]

■ In addition to their participation in the process leading to the adoption of the ABA Model Rules by the Illinois Supreme Court and Executive Committee, plaintiffs allege that certain ethics opinions rendered by the private associations violate the Sherman Act. (¶¶ 178, 220, 249.) However, any antitrust claims based on those ethics opinions are barred by the Clayton Act's

---

Rule 5.4(b) ("A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.") and New Rule 5.5 ("A lawyer shall not ... assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.").

**4.** Although plaintiffs argue in their memorandum in opposition that the associations' adoption of the ABA Model Code and ABA Model Rules restrain competition "of their own force," they fail to allege any anticompetitive effects directly attributable to the associations' involvement with these codes and *not* the Illinois Supreme Court and Executive Committee's adoption thereof.

four-year statute of limitations. 15 U.S.C. § 15b.

The Illinois Supreme Court and this court adopted the relevant provisions of the ABA Model Code in 1980 and 1982, respectively.[5] Moreover, these two courts exercise exclusive power to regulate and discipline attorney conduct. *See, e.g., People ex. rel. Brazen v. Finley,* 119 Ill.2d 485, 116 Ill.Dec. 683, 686–87, 519 N.E.2d 898, 901–02 (1988); General Rule 3.51. Therefore, any ethics opinions issued by the private associations could not have had any cognizable anticompetitive effects after 1982. *Cf. In re Airport Car Rental Antitrust Litigation,* 521 F.Supp. 568, 574 (N.D.Cal.1981), *aff'd,* 693 F.2d 84 (9th Cir.1982). Because plaintiffs filed their original complaint six years after there could have been any significant anticompetitive effect from the private associations' ethics opinions, plaintiffs' claims based on these opinions are time-barred.

Therefore, the *Noerr* doctrine and the statute of limitations for federal antitrust cases immunize defendants ABA, ISBA, and CBA from the antitrust liability alleged in plaintiffs' complaint.

### 2. The Governmental Actors

The Justices, the Executive Committee, the ARDC, and the U.S. Trustee also are immunized from antitrust liability, but for different reasons.

■ The Justices and the ARDC are immune from antitrust liability under the state-action doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker v. Brown* the Supreme Court held that the Sherman Act was not intended to restrain a state or its officers or agents from activities directed by a state legislature. 317 U.S. at 350–51, 63 S.Ct. at 313. Moreover, a state supreme court, when acting in a legislative capacity, occupies the same position as that of a state legislature. *Bates v. State Bar of Arizona,* 433 U.S. 350, 360, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1977). Therefore, the Illinois Supreme Court's adoption and enforcement of the challenged provisions of the ABA Model Code are exempt from Sherman Act liability as state action. *Hoover v. Ronwin,* 466 U.S. 558, 568, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984).

Moreover, the members of the ARDC serve merely as agents of the Illinois Supreme Court. *See Ill.Ann.Stat.* ch. 110A, ¶¶ 751–753 (Smith–Hurd Supp 1989.); *In re Mitan,* 75 Ill.2d 118, 25 Ill.Dec. 622, 624, 387 N.E.2d 278, 280 (1979) ("[T]he [ARDC] and its various officers, as well as the Inquiry Board, the hearing panel and the Review Board, serve only as agents of this court in administering the disciplinary functions that have been delegated to them."). Therefore, the members of the ARDC, too, are exempt from antitrust liability. *Bates,* 433 U.S. at 361, 97 S.Ct. at 2691; *Hoover,* 466 U.S. at 572–73, 104 S.Ct. at 1997.

■ Additionally, the Executive Committee and U.S. Trustee also are insulated from antitrust liability. The United States and its agencies or instrumentalities are not "person[s]" within the meaning of the Sherman Act. *Rex Systems, Inc. v. Holiday,* 814 F.2d 994, 997 (4th Cir.1987); *see also North Jersey Secretarial School, Inc. v. McKiernan,* 713 F.Supp. 577, 584 (S.D. N.Y.1989) ("Antitrust lawsuits brought against United States agencies and their officials cannot be maintained."). This court's Executive Committee consists of five federal district court judges charged with the responsibility of supervising and disciplining attorneys admitted to practice before this court. (¶ 15; General Rule 3.51–3.56; *Brown v. McGarr,* 774 F.2d 777, 782 (7th Cir.1985).) Plaintiffs sue the members of the Executive Committee only in their official capacity. (¶ 15.) Therefore, the actions of the members of the Executive Committee in adopting and enforcing the provisions of the ABA Model Code in question are exempt from antitrust liability. *Rex Systems,* 814 F.2d at 997.

■ Plaintiffs have alleged that the U.S. Trustee violated the Sherman Act by moving in the bankruptcy court for an order both requiring Lawline to disgorge a fee

---

**5.** According to the Office of the Clerk for the United States District Court for the Northern District of Illinois the present form of Local Rule 3.54(b) was adopted October 4, 1982.

received for the unauthorized practice of law and enjoining Lawline from further bankruptcy practice. (¶ 201 and Exhibit G attached to complaint.) Plaintiffs also complain that the U.S. Trustee reported Lawline's alleged unauthorized practice of law to the ARDC. (¶¶ 190–94).

The U.S. Trustee and his assistant, however, are federal executive officers appointed by the United States Attorney General. 28 U.S.C. §§ 581–82. Among the official duties of the U.S. Trustee is the monitoring of attorney fee applications in bankruptcy cases. 28 U.S.C. § 586(a)(3)(A). The U.S. Trustee may raise and appear and be heard on any issue relating to his responsibilities in a bankruptcy case. Bankruptcy Rule X–1009. Challenging unwarranted fee applications is a part of the U.S. Trustee's duties. *In re Pierce*, 809 F.2d 1356, 1359 n. 8 (8th Cir.1987). Therefore, as a federal officer, the U.S. Trustee's alleged actions before the bankruptcy court are exempt from federal antitrust liability. *Rex Systems*, 814 F.2d at 997.

Moreover, while the U.S. Trustee's reporting of the unauthorized practice of law to the ARDC is not specifically provided for by statute, plaintiffs have presented (and this court has found) no authority for the proposition that making such a report exceeds the U.S. Trustee's official duties. On the contrary, the Supreme Court had stated that such free and open cooperation between federal and state officers is to be "commended and encouraged." *Elkins v. United States*, 364 U.S. 206, 221, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960).

Thus, plaintiffs have alleged no facts supporting allegations that the U.S. Trustee performed anything other than official duties and acted in anything other than an official capacity in dealing with Lawline. Therefore, as federal officials the U.S. Trustee and his assistant also are not subject to federal antitrust liability in this case. *Rex Systems*, 814 F.2d at 997.

Because all of the defendants in this case are immune from federal antitrust liability, Count I must be dismissed.

### C. *Count II: Section 1983 Claim*

Plaintiffs bring Count II of their complaint under 42 U.S.C. Section 1983 ("Section 1983"). Plaintiffs allege that defendants' promulgation, adoption, and enforcement of the portions of the ABA Model Code at issue violated the First Amendment, the Due Process Clause, and the Equal Protection Clause.

#### 1. State Action

 It is axiomatic that state action is a necessary element of Section 1983 and Fourteenth Amendment claims. *National Collegiate Athletic Association v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988). However, as the Court stated in *Tarkanian:*

> In *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), we established that the State Supreme Court's enforcement of disciplinary rules transgressed by members of its own bar was state action. Those rules had been adopted *in toto* from the American Bar Association Code of Professional Responsibility. *Id.*, at 360 n. 12, 97 S.Ct., at 2697 n. 12. *It does not follow, however, that the ABA's formulation of those disciplinary rules was state action.* The State Supreme Court retained plenary power to reexamine those standards and, if necessary, to reject them and promulgate its own. See *id.*, at 362, 97 S.Ct., at 2698.

109 S.Ct. at 463 (emphasis added; footnote omitted). Thus, both *Bates* and *Tarkanian* definitively resolve that the alleged action by the private associations of promulgating a disciplinary code later adopted and enforced by the Illinois Supreme Court and this court is not state action.[6] Therefore, Count II must be dismissed against the

---

**6.** *See also, Consumers Union of the United States, Inc. v. American Bar Association*, 427 F.Supp. 506, 516 (E.D.Va.1976) (educational programs, counselling, and the drafting of model provisions to influence a state bar without more do not constitute state action), *vacated on other grounds in light of Bates, Virginia State Bar v. Consumers Union of U.S., Inc.*, 433 U.S. 917, 97 S.Ct. 2993, 53 L.Ed.2d 1104 (1977).

ABA, ISBA, and CBA for failure to state a claim upon which relief can be granted.[7]

2. Constitutional Provisions

■■■ Because Count II fails to state a claim against the private associations, only the Justices, the Executive Committee, the ARDC, and the U.S. Trustee remain. Plaintiffs allege that by adopting and enforcing the portions of the ABA Model Code at issue these defendants violated the First Amendment, the Due Process Clause, and the Equal Protection Clause. It is true that these state actors enjoy judicial and prosecutorial immunity from liability for money damages in this case. *See, e.g., Galahad v. Weinshienk,* 555 F.Supp. 1201, 1204 (D.Colo.1983); *Supreme Court of Virginia v. Consumers Union, Etc.,* 446 U.S. 719, 731–737, 100 S.Ct. 1967, 1974–1977, 64 L.Ed.2d 641 (1980). However, because plaintiffs also seek a declaration that the provisions of the ABA Model Code at issue are unconstitutional, this court's determination of the constitutional challenge will most efficiently resolve defendants' motions to dismiss.

*a. Equal Protection and Due Process*

The Justices aptly note, as they have throughout their well-reasoned memoranda, that to the extent plaintiffs have raised equal protection and due process challenges to the ABA Model Rules in question the standard of review is the same and thus both claims should be treated together. *Sutker v. Illinois State Dental Society,* 808 F.2d 632, n. 1 (7th Cir.1986).

■■■■ As noted, Disciplinary Rules 3–101(A) and 3–103 of the ABA Model Code prevent lawyers from making certain arrangements with nonlawyers involving the unauthorized practice of law. However, the distinction between lawyers and nonlawyers implicates neither a suspect classification nor a fundamental right. *Cf. Illinois Health Care Assoc. v. Dept. of Public Health,* 879 F.2d 286, 288 (7th Cir.1989); *Sutker,* 808 F.2d at 634. Therefore, the lawyer/non-lawyer classification created by the ABA Model Code provisions at issue are presumed constitutional and need only be "rationally related to a legitimate state interest" to survive equal protection·or due process analysis. *Sutker,* 808 F.2d at 634.

In applying the rational basis test, if this court "can hypothesize plausible reasons for legislation that are within the legitimate goals of a government, nothing else is required to validate the governmental classification and it does not matter whether the reasons advanced actually motivated the legislative action." *Illinois Health Care Assoc.,* 879 F.2d at 289, *quoting Evans v. City of Chicago,* 873 F.2d 1007, 1016 (7th Cir.1989).

■■■ The Illinois Supreme Court has stated that the purpose of the attorney disciplinary process is "to safeguard the public, maintain the integrity of the profession, and protect the administration of justice from reproach." *In re Schelly,* 94 Ill.2d 234, 68 Ill.Dec. 502, 505, 446 N.E.2d 236, 239 (1983). Disciplinary rules preventing lawyers from aiding nonlawyers in the unauthorized practice of law and from forming partnerships with nonlawyers if any of the activities of the partnership consist of the practice of law are rationally related to those goals.[8] Therefore, plain-

---

7. Plaintiffs' allegations that the private associations somehow conspired with the state actors do not save Count III. In order to sustain a Section 1983 conspiracy claim there must be some evidence of some concerted effort or plan between the private associations and the state actors to deny plaintiffs their constitutional rights. *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1352 (7th Cir.1985); *Mirshak v. Joyce,* 652 F.Supp. 359, 369 (N.D.Ill.1987).

Plaintiffs have alleged no such facts. On the contrary, plaintiffs incredibly state in their memorandum in response to the motions to dismiss that a more definitive statement of con-

spiracy facts might subject them to sanctions under Federal Rule of Civil Procedure 11. (Memorandum at 36.) However, plaintiffs cannot file a complaint merely to gain access to discovery with the hopes of later finding facts to support their otherwise insufficient allegations. Count II must be dismissed.

8. *See, e.g., ABA Model Code of Professional Responsibility* EC 3–1 (1987) ("The prohibition against the practice of law by a layman is grounded in the need of the public for integrity and competence of those who undertake to render legal services. Because of the fiduciary and personal character of the lawyer-client relation-

tiffs' equal protection and due process claims must be dismissed.[9]

### b. First Amendment

Plaintiffs' First Amendment claims also must be dismissed. In *Turner v. American Bar Association*, 407 F.Supp. 451 (N.D.Tex.1975) plaintiffs, citing much of the same case law as the plaintiffs in this case, claimed that they had, *inter alia*, a First Amendment right to have unlicensed lay counsel assist them in court proceedings. The court disagreed. Said the court:

> [Freedom of association cases such as *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)] did not involve the question of securing redress of grievances in Court by unlicensed counsel. Rather, they held that collective activity undertaken to obtain meaningful access to the Courts is a fundamental right within the protection of the first Amendment, and that a State cannot, under its unauthorized practice of law statutes or solicitation of legal business statutes, prohibit such activity.... [T]his Court [is] holding that the Constitution of the United States, in particular the First and Sixth Amendments, does not grant to the Plaintiffs the right to have an unlicensed layman represent them in Court proceedings. The corollary of this holding is that unlicensed laymen cannot under the Constitution demand the right to represent other litigants.

407 F.Supp. at 478. Thus, the court in *Turner* rejected the plaintiffs' claims that allowing only licensed counsel to represent others in court violated the First Amendment guarantees of either free association or free speech. *Id.* at 479; *see also Lindstrom v. State of Illinois*, 632 F.Supp.

1535, 1538–39 (N.D.Ill.1986), *dismissed without opinion*, 828 F.2d 21 (7th Cir. 1987).

 For the same reasons, this court holds that the ABA Model Code prohibitions on aiding nonlawyers in the unauthorized practice of law and on forming partnerships with nonlawyers if any of the activities of the partnership consist of the practice of law do not violate any First Amendment guarantees. Therefore, Count II as well must be dismissed for failure to state a claim upon which relief can be granted.

### D. *Count III*

Finally, in Count III plaintiffs seek relief under the Declaratory Judgment Act, 28 U.S.C. Sections 2201–2202. (¶ 18.) However, the Declaratory Judgment Act is strictly remedial in nature and does not provide a separate basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). Therefore, dismissal of Counts I and II of plaintiffs' complaint compels dismissal of Count III as well.

### III. CONCLUSION

For the reasons stated in this memorandum opinion and order plaintiffs' complaint is DISMISSED under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This case is dismissed in its entirety.

---

ship and the inherently complex nature of our legal system, the public can better be assured of the requisite responsibility and competence if the practice of law is confined to those who are subject to the requirements and regulations imposed upon members of the legal profession."); *Gassman v. State Bar*, 18 Cal.3d 125, 132 Cal. Rptr. 675, 679, 553 P.2d 1147, 1151 (1976) ("[p]rohibited fee-splitting between lawyer and layman ... poses the possibility of control by the lay person, interested in his own profit, rather than the client's fate....").

**9.** In their complaint plaintiffs also include language alleging that the challenged provisions of the ABA Model Code are unconstitutionally vague. Apparently plaintiffs object to the phrase "practice of law." However, it has long been settled that this language is sufficiently clear to withstand constitutional scrutiny. *Hackin v. Arizona*, 102 Ariz. 218, 427 P.2d 910, 912–13 (1967), *appeal dismissed*, 389 U.S. 143, 88 S.Ct. 325, 19 L.Ed.2d 347 (for want of a federal question); *see also Wright v. Lane County Dist. Court*, 647 F.2d 940, 941 (9th Cir.1981).