LAWLINE, et al., Plaintiffs–Appellants,

v.

AMERICAN BAR ASSOCIATION,
et al., Defendants–Appellees.

No. 90–2571.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1991.

Decided Feb. 25, 1992.

As Amended March 5, 1992.

Thomas Holstein (argued), Chicago, Ill., Alfred L. Levinson, Des Plaines, Ill., for plaintiffs-appellants.

Gillum Ferguson, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Crim. Div., Darryl L. DePriest (argued), Alison P. Breslauer, A. Benjamin Goldgar, Richard L. Reinish, Robert A. Creamer (argued), Keck, Mahin & Cate, Chicago, Ill., Dennis A. Rendleman, Illinois State Bar Ass'n, Staff Counsel, Springfield, Ill., Janet M. Hedrick, Rene A. Torrado, Jr. (argued), Vedder, Price, Kaufman & Kammholz, Rosalyn B. Kaplan, Asst. Atty. Gen., Office of the Atty. Gen., Nancy K. Needles, Asst. U.S. Atty., Office of the U.S. Atty., Civ. Div., Appellate Section, Fred Foreman, U.S. Atty., Crim. Div., James J. Grogan, James S. Renfroe (argued), Attorney Registration & Disciplinary Comm'n, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and RIPPLE, Circuit Judges, and REYNOLDS, Senior District Judge.[*]

* The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

CUMMINGS, Circuit Judge.

This case presents antitrust and constitutional challenges to two legal ethics rules recommended by the American Bar Association and adopted by the Illinois Supreme Court and the United States District Court for the Northern District of Illinois. The disciplinary rules at issue forbid lawyers from assisting laypersons in the unauthorized practice of law (the "unauthorized practice rule") and also forbid lawyers from entering into partnerships with nonlawyers if any of the activities of the partnership consist of the practice of law (the "partnership rule"). Specifically, plaintiffs challenge ethics rules 5.4(b) and 5.5(b) contained in the ABA Model Rules of Professional Responsibility (the "Model Rules"). Model Rule 5.4(b) provides that "[a] lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law." Model Rule 5.5(b) states that "[a] lawyer shall not: assist a person who is not a member of the bar in the performance of activity that constitutes unauthorized practice of law." The Illinois Supreme Court and the Northern District of Illinois have adopted these rules verbatim. See Illinois Rules of Professional Conduct, effective August 1, 1990; Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991, both containing the unauthorized practice rule at 5.5(b) and the partnership rule at 5.4(b).[1]

Plaintiffs contend that these two rules violate Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §§ 1 and 2). Plaintiffs also claim that the adoption of these two rules violates their constitutional right to due process and equal protection, as well as the rights secured them by the First Amendment. As a result of this alleged deprivation of rights, plaintiffs base part of their suit on the Civil Rights Act of 1871 (42 U.S.C. § 1983). They seek an award of money damages and a declaratory judgment that the contested rules are unconstitutional.

The district court dismissed plaintiffs' complaint on a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim on which relief can be granted. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons discussed below, we affirm the judgment of the district court.

I.

The first amended complaint describes the initial plaintiff, Lawline, as an unincorporated association of lawyers, paralegals and laypersons with its principal office in Chicago. The other three plaintiffs are Thomas Holstein, an Illinois lawyer who is the managing director and supervising attorney of Lawline; LeNore Nelson, a paralegal serving as Lawline's office manager and head paralegal; and Joyce Novak, a Chicagoan described as a general factory worker for Procter and Gamble Co. who received information from Lawline regarding Chapter 7 bankruptcy proceedings.

According to the plaintiffs, Holstein founded Lawline in 1978 to use law students, paralegals and lawyers to answer legal questions from the public without charge over the telephone and to assist them in representing themselves in routine legal matters. Lawline's other stated purposes are to refer members of the public without financial resources to agencies providing legal services and to refer them to young lawyers who charge reduced fees, thus creating a "prototype legal delivery system" subsidized by referral fees. In its ten years of existence, Lawline is said to have answered legal questions for more than 500,000 people, particularly in Illinois,

---

1. The amended complaint also challenges canon 3 and disciplinary rules 3–101(A) and 3–103 of the ABA Model Code of Professional Conduct (the "Model Code"), as adopted verbatim by the Northern District of Illinois in its Code of Professional Conduct pursuant to General Rule 3.52(B) of that court, and by the Illinois Supreme Court in the Illinois Code of Professional Responsibility, *Ill.Ann.Stat.* ch. 110A, Article VIII [Smith–Hurd 1985]. Because the ABA Model Rules superseded the ABA Model Code in 1983 and the challenged Model Code provisions are now extinct in Illinois state courts as well as the Northern District, this Court's analysis will focus on the applicable Model Rules as adopted and currently in force in both jurisdictions.

Indiana and Wisconsin, and also nationally through a toll-free telephone number.

Plaintiffs' first amended complaint consists of 109 pages and has 86 pages of exhibits. The complaint names as defendants the American Bar Association ("ABA"), the Illinois State Bar Association ("ISBA"), the Chicago Bar Association ("CBA"), the Justices of the Illinois Supreme Court, the members of its Committee on Professional Responsibility, the members of its Attorney Registration and Disciplinary Commission ("ARDC"), the United States Trustee for the Northern District of Illinois, the United States Trustee's Assistant, and five members of the executive committee of the court below.

The ABA House of Delegates adopted Model Rule 5.4(b) and Rule 5.5(b) in 1983. Plaintiffs allege that the adoption of the two ethics rules at issue was the result of a conspiracy among the ABA House of Delegates, ISBA Delegates, and CBA Delegates to protect traditional law firms and restrain trade. In pursuance of the conspiracy the defendants allegedly agreed to have the three bar associations issue advisory ethics opinions prohibiting non-lawyers from owning financial interests in law firms and prohibiting lawyers from forming partnerships with non-lawyers if any of the activities of the partnership consist of the practice of law.

The Northern District adopted Model Rule 5.4(b) and Rule 5.5(b) in its Rules of Professional Conduct. The district court's general rules have been amended from time to time and its most recent modifications came too late to be mentioned in the amended complaint. They were promulgated on October 29, 1991, and became effective November 12, 1991. The district court's rules still contain the same two assailed provisions. Similarly, the Illinois Supreme Court's Committee on Professional Responsibility proposed identical provisions in 1987, and Rules 5.4(b) and 5.5(b) were incorporated into the Illinois Rules of Professional Conduct effective August 1, 1990.

Plaintiffs further complain that in February 1988, defendants United States Trustee and his assistant reported to the Illinois Supreme Court's Attorney Registration and Disciplinary Commission that non-lawyers at Lawline were giving legal advice to debtors in Chapter 7 bankruptcy proceedings. According to the plaintiffs, this report resulted in an investigation of managing director Holstein. A few months later the United States Trustee filed a motion in a bankruptcy proceeding to enjoin Lawline from engaging in the practice of law in bankruptcy proceedings. He also filed an adversary proceeding against plaintiffs Lawline, Holstein and Nelson in furtherance of the supposed conspiracy.

In their pleadings, plaintiffs assail the partnership rule and the unauthorized practice rule and assert that these provisions resulted from a conspiracy between the courts and the organized bar to monopolize the dissemination of legal advice in violation of the Sherman Act (Count I) and to deprive plaintiffs of their First Amendment rights to freedom of speech and association as well as their rights of due process and equal protection in violation of the 1871 Civil Rights Act (Count II). Count III sought a declaratory judgment that the Northern District and Illinois rules are unconstitutional on their face.[2]

Due to these alleged violations, plaintiffs contend that the defendants harmed Lawline by restricting it and other similar private law referral services from advertising. In addition plaintiffs allege that they were injured because Holstein and Nelson were prevented from forming a business entity to provide low-cost legal services, resulting in lost revenues of $650,000. In their prayers for relief, plaintiffs have sought treble

---

**2.** Although the plaintiffs also challenged the two ethics rules as applied to them, plaintiffs have not been sanctioned by the Illinois Supreme Court or the Northern District and at oral argument the defendants stipulated that plaintiffs' conduct was not prohibited by the ethics rules at issue. Moreover, in their reply brief in this

Court plaintiffs deny that any non-lawyers at Lawline have given legal advice without supervision by licensed lawyers. (Reply Br. at 2). Therefore, any argument concerning the application of the rules to the plaintiffs' conduct is not before us.

damages, attorney's fees, and an injunction prohibiting the enforcement of the challenged rules and requiring defendants to adopt new rules permitting non-lawyers to own interests in law firms. They have also asked for an order requiring the establishment of a $1,000,000 research institute to promote "the development of interprofessional models for the cost-efficient delivery of legal information" and the "assistance of the general public in pro-se representations." Finally, they have sought an order enjoining adoption of a new Illinois Code of Professional Responsibility. However, that request became moot when, after the dismissal of plaintiffs' case, the Illinois Supreme Court repealed the Code of Professional Responsibility effective August 1, 1990, and substituted therefor the Illinois Rules of Professional Conduct.[3]

The district court issued a memorandum opinion and order pursuant to Federal Rule of Procedure 12(b)(6) granting the defendants' motions to dismiss for failure to state a claim upon which relief can be granted. Judge Holderman thoughtfully addressed the merits of plaintiffs' claims. He also noted that the over-lengthy complaint was "often confusing, needlessly repetitious, and permeated with unnecessary evidentiary allegations" in violation of Rule 8 of the Federal Rules of Civil Procedure and constituted an alternate basis for dismissal of the complaint. *Lawline v. American Bar Ass'n*, 738 F.Supp. 288, 291 n. 1 (N.D.Ill.1990).

## II.

### A. Sherman Act Immunity

■ In the opinion below, Judge Holderman held that all defendants were immune from federal antitrust liability so that Count I was dismissed. 738 F.Supp. at 292–293. We agree.

As to the three bar associations, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 controls. The disciplinary rules at issue in this case were adopted by the Illinois Supreme Court and by the court below. It is because of their adoption by these two governmental bodies that plaintiffs are supposedly restrained from practicing law. As the Supreme Court held in *Noerr*, "Where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, no violation of the [Sherman] Act can be made out." 365 U.S. at 136, 81 S.Ct. at 529. It is immaterial that these rules were prompted by the defendant bar associations, because *Noerr* also decided that "the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive [here the judiciary acting in a legislative capacity] to take particular action with respect to the law that would produce a restraint or monopoly." *Id.* It is immaterial too that the bar associations encouraged the adoption of these rules because *Allied Tube & Conduit Corporation v. Indian Head, Inc.*, 486 U.S. 492, 499, 108 S.Ct. 1931, 1936, 100 L.Ed.2d 497 decided that "those urging the governmental action enjoy absolute immunity for the anticompetitive restraint."

■ The plaintiffs also challenge as anticompetitive certain ethical opinions promulgated by the defendant bar associations. However, this Court has held that "when a trade association provides information" (by giving its approval in that case, its disapproval in this case) "but does not constrain others to follow its recommendations, it does not violate the antitrust laws." *Schachar v. American Academy of Ophthalmology, Inc.*, 870 F.2d 397, 399

---

**3.** In November 1990, prior to filing a brief on the merits, defendants United States Trustee and Assistant United States Trustee commendably filed a motion to dismiss the appeal as to them in order for us to try to dispose of the matter in abbreviated fashion pursuant to this Court's suggestion in *Brooks v. Allison Div. of General Motors Corp.*, 874 F.2d 489, 490 (7th Cir.1989). The supporting and opposing documents totaled 42 pages and the numerous remaining defendants did not file similar motions. Consequently, our then motion judge determined that the best course was to defer ruling on the motion to dismiss until the whole controversy was resolved. In accordance with this opinion disposing of the entire case, the motion to dismiss has become moot.

(7th Cir.1989) (citing *Consolidated Metal Products, Inc. v. American Petroleum Institute,* 846 F.2d 284 (5th Cir.1988)). This is so even where the organization at issue has a towering reputation. *Id.* Even if the Illinois State Bar Association had issued an opinion that it believed certain types of conduct to be violative of the Illinois Rules of Professional Conduct, that opinion could have no anticompetitive effect unless the Illinois State Supreme Court or the Northern District agreed with the ISBA's assessment. It is Illinois' and the Northern District's promulgation and enforcement of the challenged ethics rules and not private parties' interpretation of those rules that restrains competition. In sum, the three bar associations are immune from the alleged antitrust liability.

■ The district court also correctly held that the justices of the Illinois Supreme Court,[4] the Attorney Registration and Disciplinary Commission, the Executive Committee of the district court, the United States Trustee and the United States Trustee's Assistant are immune from antitrust liability. The Illinois Supreme Court and the ARDC are protected by the state-action doctrine enunciated in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315. There the Supreme Court adopted a state-action immunity from the Sherman Act because its legislative history showed no congressional purpose to restrain state action or official action directed by a state. Here the Illinois Supreme Court was acting in a legislative capacity and therefore in the same position as a state legislature, so that the activities in question are exempt from Sherman Act liability. *Hoover v. Ronwin,* 466 U.S. 558, 568, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590; *Bates v. State Bar of Arizona,* 433 U.S. 350, 360, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810. The ARDC serves as an agent of the Illinois Supreme Court; consequently the members of the ARDC also enjoy antitrust immunity. *Bates,* 433 U.S. at 361, 97 S.Ct. at 2697; *Hoover,* 466 U.S. at 572–573, 104 S.Ct. at 1997.

■ Similarly, the Executive Committee of the district court is insulated from Sherman Act liability. The members of that committee consist of five federal district court judges who are responsible for supervising and disciplining attorneys practicing before them. Since they are serving as instrumentalities of the United States, this suit cannot be maintained against them. *Rex Systems, Inc. v. Holiday,* 814 F.2d 994, 997 (4th Cir.1987).

■ The United States Trustee and the Trustee's assistant were also made defendants. Because in their official actions they are federal executive officers (28 U.S.C. §§ 581–582) and were acting in their official capacities, they also are not liable under the Sherman Act. *Rex Systems,* 814 F.2d at 997.

As the district judge held, Count I must be dismissed because all the defendants are immune from federal antitrust liability.

## B. Liability under Section 1983 of the Civil Rights Act of 1871

### 1. State Action

■ In Count II plaintiffs allege that defendants' adoption and enforcement of the disciplinary rules at issue contravene the First Amendment and the Due Process and Equal Protection clauses of the United States Constitution, thus violating Section 1983 of the 1871 Civil Rights Act. In order to establish a viable claim of deprivation of rights under Section 1983, plaintiffs must not only show that their constitutional rights were violated, they must also show that the defendants acted under color of state law. Here the three bar associations have not engaged in state action by formulating the disciplinary rules in question. *National Collegiate Athletic Association v. Tarkanian,* 488 U.S. 179, 194, 109 S.Ct. 454, 463, 102 L.Ed.2d 469 (holding that a state actor's voluntary decision to adopt a private association's rules did not transform the private association's rules into state rules nor did it transform the private actor into a state actor). In concluding

---

**4.** Our disposition of all counts with respect to the Illinois Supreme Court applies to its agent, the Committee on Professional Responsibility, as well.

that the private bar associations are not state actors for the purpose of Section 1983, this Court relies upon the fact that "the power to prescribe rules governing attorney conduct and to discipline attorneys for violating those rules, rests solely in [the Illinois Supreme Court]." *People ex rel. Brazen v. Finley,* 119 Ill.2d 485, 494, 116 Ill.Dec. 683, 687, 519 N.E.2d 898, 902 (1988). The Illinois Supreme Court has not only adopted its own disciplinary rules, but has also appointed an Attorney Registration and Disciplinary Commission not affiliated with the private bar associations to administer those rules. Similarly, the Northern District exercises exclusive power to regulate attorney conduct within its jurisdiction. See United States District Court for the Northern District, General Rules 3.51–3.53 (1991). Consequently, Count II is not viable against the three bar associations.[5] Therefore it becomes necessary to see whether Count II states a claim against the Illinois Supreme Court, the ARDC and the Northern District's Executive Committee. As state actors performing acts in their legislative capacity, these defendants are immune from money damages. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 731–737, 100 S.Ct. 1967, 1974–1977, 64 L.Ed.2d 641.

## 2. Constitutional Challenges

*Due Process and Equal Protection*

Plaintiffs also seek a declaratory judgment that the rules in question are unconstitutional as violative of the Due Process Clause and the Equal Protection Clause. Unless a governmental regulation draws a suspect classification or infringes on a fundamental right, the government need only show that its regulation is rationally related to a legitimate state interest. As the district court explained (738 F.Supp. at 295), the two rules in question meet this test because they are designed to safeguard the public, maintain the integrity of the profession, and protect the administration of justice from reproach (quoting from

*In re Schelly,* 94 Ill.2d 234, 241, 68 Ill.Dec. 502, 505, 446 N.E.2d 236, 239 (1983)).

The partnership rule limitation promotes the independence of lawyers by preventing non-lawyers from controlling how lawyers practice law. The regulation attempts to minimize the number of situations in which lawyers will be motivated by economic incentives rather than by their client's best interests. See L. Harold Levinson, *Independent Law Firms That Practice Law Only: Society's Need, the Legal Profession's Responsibility,* 51 Ohio St. L.J. 229 (1990) (arguing that admitting non-lawyers into legal partnerships will impair the independence and decisional autonomy of lawyers and the legal profession). The state's interest in preserving the professional independence of lawyers is an adequate justification for the partnership rule and is within the legitimate interest of the state in governing the legal profession. *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (noting that States have broad power in regulating professional practice).

The district judge also held that the unauthorized practice rule is rationally related to a legitimate state interest. In reaching this conclusion, Judge Holderman relied upon the following quotation from the 1987 ABA Model Code of Professional Responsibility:

The prohibition against the practice of law by a layman is grounded in the need of the public for integrity and competence of those who undertake to render legal services. Because of the fiduciary and personal character of the lawyer-client relationship and the inherently complex nature of our legal system, the public can better be assured of the requisite responsibility and competence if the practice of law is confined to those who are subject to the requirements and regulations imposed upon members of the legal profession. 738 F.Supp. at 295–296 n. 8.

**5.** In addition, the United States Trustee and the Assistant United States Trustee are immune from a § 1983 suit because they are federal officers and their actions fall short of establish-

ing a private conspiracy with state officials to deprive plaintiffs of their constitutional rights. See *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204 (7th Cir.1980).

Some commentators disagree with government prohibitions against unauthorized practice, see, *e.g.*, Deborah L. Rhode, *Policing the Professional Monopoly: A Constitutional and Empirical Analysis of Unauthorized Practice Problems*, 34 Stan. L.Rev. 1 (1981) (arguing that restraints on lay practice are not necessary to a state's interest in preventing incompetent legal assistance); Barlow F. Christensen, *The Unauthorized Practice of Law: Do Good Fences Really Make Good Neighbors—or Even Good Sense?*, 1980 Am.B.Found. Res.J. 159 (tracing the history of restrictions on unauthorized practice and advocating their abolition); Milton S. Friedman, *Capitalism and Freedom* (1962) (arguing that licensure invariably leads to monopolistic control by members of an occupation). Although scholars may disagree about the effect of the legal ethics rules, the state may choose any regulations that are rational. When employing the appropriate rational basis test, this Court does not require that the state choose the wisest policy, only that it choose a constitutional one.

In sum, we too conclude that the assailed rules bear a rational relation to proper state goals, thus requiring the dismissal of the equal protection and due process claims.

*First Amendment*

 The plaintiffs also assert that both the unauthorized practice rule and the partnership rule violate their First Amendment rights in violation of Section 1983 of the Civil Rights Act.

The plaintiffs contend that the unauthorized practice rule violates their First Amendment freedom of speech. Plaintiffs have conceded that the states have a right to restrict the practice of law to qualified individuals (Br. 13), thus justifying the unauthorized practice rule's provision that lawyers may not assist non-lawyers in the unauthorized practice of law. Any abridgment of the right to free speech is merely the incidental effect of observing an otherwise legitimate regulation. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447,

459, 467–468, 98 S.Ct. 1912, 1924–1925, 56 L.Ed.2d 444; *Accountant's Society of Virginia v. Bowman*, 860 F.2d 602, 604 (4th Cir.1988). While the practice of law and the exercise of free speech are not indistinguishable, neither are they mutually exclusive. As Erwin Griswold noted, "there are many things that lawyers do * * * which are properly also done by others." Barlow F. Christensen, *The Unauthorized Practice of Law: Do Good Fences Really Make Good Neighbors—or Even Good Sense?*, 1980 Am.B.Found.Res.J. 159, 195. There may well be many activities which lawyers routinely engage in which are protected by the First Amendment and which could not be constitutionally prohibited to laypersons. However, this Court will not strike down the unauthorized practice rule as facially invalid on the assumption that the Illinois Supreme Court and the Northern District will construe their unauthorized practice prohibitions so broadly as to infringe upon protected First Amendment rights.[6] Although we uphold the validity of the unauthorized practice rule against facial constitutional attack, we do not speculate as to whether this regulation would be constitutional as applied to particular cases.

 Plaintiffs also complain that "the practice of law" term in the unauthorized practice rule is unconstitutionally vague. This claim too has no merit. A statute may be void for vagueness if it is vague in all of its applications, *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 or if vague as applied, *Parker v. Levy*, 417 U.S. 733, 753–758, 94 S.Ct. 2547, 2560–2563, 41 L.Ed.2d 439. The unauthorized practice rule is not vague in all of its applications. There are some activities which clearly constitute the practice of law, such as representing another person at trial or signing legal documents filed in court on behalf of another person. Furthermore, as the unauthorized practice rule has not been applied to the plaintiffs' conduct, it may not be challenged as applied.

---

**6.** Indeed, plaintiffs do not refer to any Illinois or Northern District cases which adopt an over-broad interpretation of the unauthorized practice rules.

■ Finally, plaintiffs challenge the partnership rule as violative of their First Amendment freedom of association. In support of their claim, plaintiffs cite *United Mine Workers v. Illinois State Bar Association*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426. In that case the Supreme Court held that union members had a First Amendment right to collectively employ an attorney. It therefore invalidated an Illinois Supreme Court injunction that prevented the union's conduct as the unauthorized practice of law. In reaching its holding, the Supreme Court rejected the Illinois State Bar Association's argument that allowing a union to employ a lawyer would lead to "baseless litigation and conflicting interests between the association and individual litigants." *Id.* at 223, 88 S.Ct. at 356. Although the rationales advanced here in support of the partnership rule are exactly those advanced in the *Mine Workers* case, defendants have inexplicably failed to cite that case. This is so even though plaintiffs rely on this authority for the proposition that the inherent threat of public harm from allowing lawyers to practice law as partners of non-lawyers is as speculative as the threat posed by allowing lawyers to practice law as employees of non-lawyers.

Although this Court notes that the interests sought to be protected by the state in this case are nearly identical to those advanced in *Mine Workers*, there is an important difference between the two cases. *Mine Workers* does not establish laypersons' right to associate with lawyers in the abstract. Rather it supports the proposition that laypersons have a right to obtain meaningful access to the courts, and to enter into associations with lawyers to effectuate that end. In *Mine Workers* plaintiffs had shown that the association prohibited by the state rule was necessary for the union members in order to realize their right to free speech, petition and assembly. As the Court said in *United Transp. Union v. State Bar of Michigan*, the common thread in the line of cases that includes *Mine Workers* and *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405, "is that collective activity undertaken to provide meaningful access to the courts is a fundamental right within the protection of the First Amendment." 401 U.S. 576, 585–586, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339. This interpretation of Supreme Court precedent comports with the traditional understanding that freedom of association provides "a right to join with others to pursue goals independently protected by the first amendment." Laurence Tribe, *American Constitutional Law*, 1013 (2d ed. 1988).

In this case, however, no such fundamental right is at issue. Plaintiffs have not shown that laypersons will be deprived of meaningful access to the courts if lawyers are unable to form partnerships with laypersons. Thus the heightened scrutiny of the state's justification in *Mine Workers* has not been triggered in this case.

Like the unauthorized practice rule, scholars disagree about the desirability and effect of the partnership rule. Jurisdictions that disagree with restrictions on legal partnerships can change, and at least one jurisdiction already has changed, those rules. See Note, *Law Firm Diversification and Affiliations Between Lawyers and Nonlawyer Professionals*, Geo.J.Legal Ethics, Vol. III, No. 4, 885 (1990) (discussing Washington D.C.'s abandonment of the partnership rule). However, this Court is not persuaded that states are constitutionally required to do so.

Since these two rules do not violate the Due Process and Equal Protection clauses or the First Amendment, Count II was properly dismissed.

## C. Dismissal of Count III

■ In Count III plaintiffs have sought a declaratory judgment under 28 U.S.C. §§ 2201–2202 that these rules are unconstitutional under the First and Fourteenth Amendments. The declaratory judgment act does not give subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194. As shown, Counts I and II were properly dismissed and therefore there is

no basis for Count III. It was properly dismissed for want of jurisdiction.

Judgment of dismissal affirmed.