**ASSOCIATED BODYWORK AND MASSAGE PROFESSIONALS, a Colorado corporation, Plaintiff,**

v.

**AMERICAN MASSAGE THERAPY ASSOCIATION, Defendant.**

**No. 95 C 367.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 1, 1995.

Robert Scott Bell, Jr., Cosby & Bell, Chicago, IL, Robert E. Wagner, Julie M. Marcus, Robert E. Wagner & Associates, Springfield, IL, for plaintiff.

Gene H. Hansen, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, Dawn Carol Wrona, Sanchez & Daniels, Chicago, IL, Marc William O'Brien, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of Defendant American Massage Therapy Association ("AMTA") to dismiss the complaint of Plaintiff Associated Bodywork and Massage Professionals pursuant to Rule 12(b)(6). For the reasons set forth below, the motion is granted as to Counts II and IV; because Plaintiff's federal claims are dismissed, the court sua sponte declines to exercise supplemental jurisdiction over Counts I and III.

### I. *Background*

Plaintiff is a for-profit corporation whose stated purpose is the assistance of massage therapy professionals in the advancement of massage therapy as a profession. At all times material to this case, Plaintiff was a business of good name and reputation, enjoying high esteem both from the public in general and within the massage therapy industry. Defendant is a not-for-profit organization. Through its Government Relations Committee, Defendant contacts various state legislatures across the nation and recommends the enactment of regulatory schemes for the practice of massage therapy.

Defendant has also created the National Certification Board for Therapeutic Massage and Bodywork ("NCBTMB"), as Defendant's administrative affiliate, to supervise certification of massage therapists. The Commission on Massage Therapy Training Accreditation/Approval ("COMTTA") evaluates massage therapy schools and education programs as a self-run affiliate of Defendant. Several state legislatures have approved both NCBTMB and COMTTA programs as part of their massage therapy regulatory schemes.

Through its Government Relations Committee, Defendant routinely distributed literature to legislators of various states, advocating the adoption of massage therapy regulation. The advocated regulations provide, in part, that massage therapists (1) participate in massage therapy training programs which have been accredited by an independent accrediting body (such as COMTTA), (2) receive certification from a national certification program similar to the NCBTMB's, and

(3) belong to a recognized national professional society. In detailing this third recommended regulation, membership in a recognized national professional society, Defendant's literature states, in part:

> Closely-held, for-profit enterprises such as the Associated Bodyworkers and Massage Professionals of Colorado would be excluded from the professional membership qualification. Unfortunately, a private organization provides a loophole model too easily adapted to the service of organized crime.

(Compl.Ex. A.)

Plaintiff's complaint contains four counts: Count I alleges a state law libel claim based on the above quotation; Count II alleges violation of the Sherman Antitrust Act, 15 U.S.C. § 1 (1964); Count III alleges violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1–7 (1966); and Count IV alleges violation of the Organized Crime Control Act, Racketeer Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1961.

■ On a motion to dismiss, all well-pleaded factual allegations are presumed to be true. *Land v. Chicago Truck Drivers*, 25 F.3d 509, 511 (7th Cir.1994). The court must view those allegations in the light most favorable to the plaintiff, *Gould v. Artisoft, Inc.*, 1 F.3d 544, 546 (7th Cir.1993), and accept all reasonable inferences to be drawn from those allegations as true, *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). However, the court is not constrained by the plaintiff's legal characterizations of its allegations. *Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 183 (7th Cir.1986).

■ Additionally, the court must construe the pleadings liberally, and mere vagueness or lack of detail alone will not constitute sufficient grounds to dismiss a complaint. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). The complaint need not specify the correct legal theory nor point to the right statute to survive a Rule 12(b) motion to dismiss. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134–35 (7th Cir.1992). Rather, the complaint must state, either directly or inferentially, allegations establishing the necessary elements for recovery under the chosen legal theory. *Glatt v.*

*Chicago Park Dist.*, 847 F.Supp. 101, 103 (N.D.Ill.1994).

## II. *Antitrust Count*

■ In Count II of the complaint, Plaintiff contends that Defendant's efforts to influence the legislatures, in conjunction with the functioning of the NCBTMB and COMTTA, restrain trade in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 (Supp.1989). According to Plaintiff, Defendant AMTA, NCBTMB, and COMTTA have intentionally conspired to monopolize the industry of massage therapy, thus directly restraining trade and interstate commerce in violation of the Act. Plaintiff states that they have done so state-by-state, by lobbying for and creating "certification requirements" which expressly favor Defendant and its affiliates, and by structuring these requirements to effectually exclude non-AMTA-members from the industry. This has caused Plaintiff to suffer damage to its business reputation, loss of prospective financial income, and severe hardship in the operation of its business.

Defendant anchors its motion to dismiss the antitrust portion of Plaintiff's complaint on the argument that Defendant's actions enjoy protection from prosecution under the First Amendment. Indeed, the type of activity Plaintiff complains of has long been recognized as immune by the First Amendment right to petition the government. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Defendant argues that the law on this issue in this circuit is "gin clear." (Def.'s Mem. Dismiss at 7 (citing *Lawline v. American Bar Ass'n*, 956 F.2d 1378 (7th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 551, 126 L.Ed.2d 452 (1993)).)

■ *Lawline* holds that, when private organizations encourage legislative action eventually resulting in anticompetitive restraints on potential competitors, those organizations "enjoy absolute immunity for the anticompetitive restraint." *Lawline*, 956 F.2d at 1383 (citing *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499, 108 S.Ct. 1931, 1936, 100 L.Ed.2d 497 (1988)). This rule acknowledges that a contrary holding could chill the exercise of the constitutionally

protected right to petition the government, thereby denying the government useful input from parties fearful of antitrust liability. *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* 14 (Supp.1992).

■ Furthermore, where, as here, the alleged injury stems from a competitor's success in influencing legislation, that injury is caused by the state legislatures' political decisions, not by the competitor itself. Although Defendant may have encouraged the legislatures' actions, the choice to enact massage therapy regulations constituted an independent governmental choice, comprising a supervening "cause," and breaking the link between Defendant's actions and any injury Plaintiff may have suffered. *Id.*

The First Amendment's protection of political efforts to encourage legislation extends even where a party possesses an anticompetitive motive in petitioning for legislation. The selfishness of a party's political motives is irrelevant. *City of Columbia & Columbia Outdoor Advertising v. Omni Outdoor Advertising*, 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991). Concerted efforts to influence legislatures are shielded from the reaches of the Sherman Act, regardless of anticompetitive intent or purpose. *Id.* at 380, 111 S.Ct. at 1354 (citing *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)). Accordingly, Defendant's successful efforts to encourage legislation are protected by the First Amendment, even if those efforts were motivated by anticompetitive animus.

In its response to Defendant's motion, Plaintiff argues, in an apparent attempt to assert the "sham" exception to Defendant's First Amendment protection, that Defendant should lose the protection because Defendant attempted to deny Plaintiff access to the regulatory process. However, Plaintiff's complaint contains assertions of no more than Defendant's successful attempts to encourage legislation.

■ Even if Defendant did attempt to deny Plaintiff access to the legislative petitioning system, the narrow "sham" exception would apply to Defendant's attempts only if Defendant had no reasonable expectation of obtaining the favorable legislation. *See City of Columbia*, 499 U.S. at 380, 111 S.Ct. at 1354. Since, as Plaintiff emphasized in its complaint, many states actually adopted legislation like that encouraged by Defendant, Defendant cannot be said to have lacked any reasonable expectation that the legislatures would follow Defendant's recommendations.

■ Plaintiff further argues in its response that the "sham" exception should apply because Defendant used improper means (i.e., libel) when recommending the legislation which resulted in restrained competition. However, restraints which are generally not within the reach of the Sherman Act are not brought within its sweep by mere allegations that the restraints were accomplished by improper means under state law. *Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 508, 108 S.Ct. 1931, 1941, 100 L.Ed.2d 497 (1988).

The narrow scope of the "sham" exception stems from recognition that antitrust laws, "tailored as they are for the business world, are not at all appropriate for application in the political arena." *Noerr*, 365 U.S. at 141, 81 S.Ct. at 531. Because they took place wholly within the political arena, Defendant's legislative efforts do not fall within the "sham" exception and, therefore, enjoy First Amendment protection.

■ Furthermore, actionable antitrust conspiracies must involve separate and unrelated entities, not closely held affiliates. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Plaintiff contends that whether NCBTMB is indeed separate and unrelated is a question of fact which necessitates the denial of Defendant's motion. However, in its complaint, Plaintiff states "NCBTMB is an administrative affiliate of Defendant, its parent organization," and continues on to detail the close ties between NCBTMB and Defendant. (Compl. at 4.) Similarly, Plaintiff details the close ties between Defendant and COMTTA. Taking, as we must, all allegations in Plaintiff's complaint as true, Plaintiff has not alleged an actionable antitrust conspiracy and Count II of the complaint is dismissed.

### III. *RICO Count*

■ Count IV of Plaintiff's complaint alleges that Defendant AMTA, in conjunction

with NCBTMB and COMTTA, conspired to conduct an enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1961. Plaintiff predicates its RICO claim on an assertion that Defendant transmitted fraudulent information through the United States mail. Plaintiff states that this mail fraud occurred when Defendant mailed its allegedly libelous literature to various state legislatures on two separate occasions, directing the legislatures to enact massage therapy regulations.

■ As discussed above in the antitrust context, the court recognizes that Defendant's communications with the legislatures are entitled to First Amendment protections, despite allegations that those communications contained libelous statements. Vital to our political system is the free trade of information between legislators and the public. In this marketplace of ideas, free trade means "free trade in the opportunity to persuade action, not merely to describe facts." *N.A.A.C.P. et al. v. Claiborne Hardware Co. et al.*, 458 U.S. 886, 910, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982) (quoting *Thomas v. Collins*, 323 U.S. 516, 537, 65 S.Ct. 315, 325, 89 L.Ed. 430 (1945)). In the context of the instant case, RICO should not be employed so as to raise the price of trade in the free speech marketplace. Allegations of non-violent state law transgressions will not inject RICO implications into protected speech. *See National Org. for Women, Inc. v. Scheidler*, 897 F.Supp. 1047, 1084, (N.D.Ill.1995).

■ In addition, business rivals may not use the RICO statute to support a cause of action for injuries indirectly caused by mail fraud which was perpetrated against third parties. *See Israel Travel Advisory Serv. v. Isr. Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir.1995) (citing *Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405–06 (9th Cir.1991)). Plaintiff seems to complain of a fraud perpetrated against the state legislatures but which caused injury to Plaintiff. Plaintiff was not the direct victim of the alleged fraud: the injury complained of stems directly from political decisions to legislate, not from the Defendant's conduct.

In drafting RICO, Congress did not intend to create a statutory sieve through which business rivals can filter the content of their competitors' communications with legislative bodies. Nor was it their intent to create protection for themselves from the content of unwanted, unsolicited, even if offensive, communications from private or commercial interests. A representative republic requires the unimpeded flow of information and ideas from its citizens. Although Plaintiff may have a common law remedy against Defendant, the alleged indirect injury does not give rise to a RICO remedy.

Therefore, because Plaintiff has failed to allege the predicate mail fraud and because of First Amendment considerations, Plaintiff's RICO Count is dismissed.

### IV. *Conclusion*

Accordingly, Defendant's motion to dismiss is granted with prejudice as to Counts II and IV. The court declines to exercise supplemental jurisdiction over Counts I and III.

IT IS SO ORDERED.